RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0400P (6th Cir.)
File Name: 00a0400p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

     *v.*

KEENAN KESTER COFIELD,
     *Defendant-Appellant.*

No. 99-5437

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 91-00024—Thomas G. Hull, District Judge.

Argued: October 24, 2000

Decided and Filed: November 22, 2000

Before: MARTIN, Chief Judge; NORRIS, Circuit Judge;
FORESTER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Kevin M. Schad, SCHAD, BUDA & COOK, Cincinnati, Ohio, for Appellant. Guy W. Blackwell, ASSISTANT UNITED STATES ATTORNEY, Greeneville,

_____

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

Tennessee, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD, BUDA & COOK, Cincinnati, Ohio, for Appellant. Guy W. Blackwell, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

————————————

## OPINION

————————————

BOYCE F. MARTIN, JR., Chief Judge.  Keenan Kester Cofield appeals the revocation of his supervised release, imposed after his 1991 conviction for wire fraud in violation of 18 U.S.C. § 1343.  For the following reasons, we AFFIRM the district court's revocation of supervised release.

I.

Cofield is a "scam artist" who attempted to extort money from the *Chattanooga Times* in a false obituary scheme in 1989.  *United States v. Cofield*, No. 91-5957, 1992 WL 78105, at *1 (6th Cir. Apr. 17, 1992) (per curiam).  In February of that year he had a friend phone in notice of his death to the newspaper, which published an obituary for Cofield shortly thereafter.  Cofield sent a mailgram to the *Times* on February 24, both advising the newspaper that he was alive and demanding compensation for the mental anguish the obituary had caused him and his family.  He then sued the *Times* and seven of its employees for defamation and intentional infliction of emotional distress.  He later offered to settle the claims for $150,000; the newspaper chose to fight them and spent $20,000 in legal fees to do so.  On May 20, 1991, a jury convicted Cofield of the criminal charges arising from this scheme in violation of 18 U.S.C. § 1343, the federal wire fraud statute.  At Cofield's sentencing hearing, the district court orally pronounced a sentence of five years incarceration.  The written judgment and commitment order reflected a sentence of five years in prison, plus three years of supervised release and an order to pay $20,000 in restitution to the *Chattanooga Times*.

This court affirmed Cofield's wire fraud conviction, which he appealed in 1992. *See id.* at *7. Cofield has also filed numerous motions, construed as having been filed under 28 U.S.C. § 2255, raising trial and sentencing issues. The district court has denied these motions and this court has affirmed the denials. *See Cofield v. United States*, No. 96-5333, 1997 WL 234613 (6th Cir. May 6, 1997) (per curiam); *Cofield v. United States*, No. 94-5075, 1994 WL 548805 (6th Cir. Oct. 6, 1994) (per curiam). Upon his discharge from prison, Cofield began serving his three-year term of supervised release. On March 8, 1999, the district court found that he violated five conditions of his supervised release and revoked it, sending him back to prison for another two years.

## II.

In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release. *See United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1996). Once this finding is made, whether the defendant's supervised release should be revoked is reviewed for an abuse of discretion. *See id.* at 85-86.

## A.

Cofield contends that the district court had no jurisdiction to revoke his supervised release because it improperly imposed supervised release at his sentencing. Cofield cites a widely-accepted rule to support his claim: if there is a discrepancy between the oral pronouncement of a criminal sentence and the written judgment, the oral sentence generally controls. *See United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir. 1988). He notes that the district court's oral pronouncement of his sentence did not mention the possibility of supervised release, while the written judgment and commitment order did. Therefore, Cofield concludes, the written judgment, and his term of supervised release, is invalid. We do not challenge the general rule, but we reject his conclusion.

In Cofield's sentencing hearing, the district court imposed a five-year term of incarceration, the maximum for a wire fraud violation under 18 U.S.C. § 1343. The district court did not mention a term of supervised release. Still, such a term was mandatory under the sentencing guidelines in effect at the time of Cofield's crime. The relevant guideline reads, "The court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed." U.S. SENTENCING GUIDELINES MANUAL § 5D1.1 (1989).

The Second Circuit addressed a similar situation in 1997. *See United States v. Jolly*, 129 F.3d 287 (2d Cir. 1997). There, the district court, following a conviction of mail fraud, ordered the defendant to pay restitution of $810,000, payable "at a minimum of $200 a month, or 20 percent of [his] gross income, whichever is greater." *Jolly*, 129 F.3d at 289. The written judgment of sentence entered shortly thereafter contained the same terms. After the sentence was appealed and the case remanded on another issue, at the resentencing hearing the district court apparently misspoke and orally stated that the defendant's restitution payments should be made "at a minimum of $100 per month or 10 percent of [his] gross income, whichever is greater." *Id.* The amended written judgment then reinstated the original payment schedule at two hundred dollars per month. *See id.* That Court of Appeals held that the general rule, that an oral pronouncement controls over a written judgment of sentence, should not apply "in a resentencing proceeding where the record suggests a substantial possibility that the district court misspoke in an oral pronouncement regarding a portion of the sentence that was neither discussed  nor disputed by the parties." *Id.*

The discrepancy in this case arose at Cofield's original sentencing hearing, not a resentencing proceeding. Still, *Jolly*'s reasoning is persuasive. Here, the district court failed to mention a facet of his punishment, the supervised release term, which was mandated by the sentencing guidelines. The "misstatement" lay in not orally stating what the guidelines

a defendant's right to due process of law. *See United States v. Cross*, 128 F.3d 145, 148 n.2 (3d Cir. 1997).

Cofield downplays the actual sequence of events in his case, however.  He had an initial revocation hearing—complete with evidence drawn out on direct- and cross-examination—on February 9, 1999; this hearing was adjourned so the district court could take the matter under advisement for a full month. The court's findings of fact and order were then prepared for the second hearing on March 8. While more evidence was briefly presented at the second hearing, the district court did not find it persuasive, and instead relied on the evidence already gathered on February 9. Under the circumstances, having findings of fact and an order prepared by the start of the second hearing does not amount to a denial of the defendant's right to due process of law.

### III.

For the foregoing reasons, we believe the district court did not abuse its discretion in  revoking Cofield's supervised release, and we AFFIRM its decision.

### D.

Cofield next claims that the district court erred in using the amended 1998 sentencing guidelines for release revocation in considering his case. He argues that the 1998 guidelines were more severe than those in effect at the time he attempted his fraud against the *Chattanooga Times*—that is, the guidelines from 1989. Therefore, Cofield claims that using the 1998 guidelines to govern revocation of Cofield's supervised release was a violation of the Ex Post Facto Clause of the Constitution.

Cofield misunderstands the critical timing at issue here. While the 1989 sentencing guidelines were appropriate for his original sentencing hearings, he violated his supervised release conditions in 1997 and 1998. The correct guidelines for consideration of these violations were the ones in effect in 1997. Section 7B1.3(b) is identical for both 1997 and 1998; it reads, "In the case of a revocation of probation or supervised release, the applicable range of imprisonment is that set forth in § 7B1.4 (Term of Imprisonment)." U.S. SENTENCING GUIDELINES MANUAL § 7B1.3 (1997). Given Cofield's Criminal History Category of V and a Grade B supervised release violation, the revocation table from Section 7B1.4 makes clear that the district court was required to sentence Cofield to between eighteen and twenty-four months in prison. U.S. SENTENCING GUIDELINES MANUAL § 7B1.4 (1997).

The district court's use of the 1998 sentencing guidelines did not affect Cofield's substantial rights and, thus, its decision should not be disturbed.

### E.

Finally, Cofield says that because the district court brought previously prepared findings of fact and an order to his revocation hearing, he did not have a hearing before an impartial judge. He cites a footnote from a Third Circuit case to suggest that a hearing where the judge fails to listen to evidence because his decision has already been made violates

required. To the extent that the district court erred in its omission, the error was harmless, and was corrected later the same day when the written judgment and commitment order was filed in the district court. Unfortunately, such errors can easily be made in the confusion of a district court docket that will often bring many defendants before the court in succession. Allowing Cofield to profit from this kind of mistake would itself be a serious error.

Also, Cofield failed to object to his sentence once the written judgment and commitment order was entered by the district court. He also did not raise this issue on direct appeal or in his Section 2255 motions, and he has thus waived his opportunity to challenge the imposition of his supervised release. "Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside the normal appellate system. . . . Accordingly, nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Cofield has waived any opportunity to challenge the terms of his sentence. Furthermore, the district court properly imposed supervised release on the defendant and thus had jurisdiction to revoke the defendant's supervised release.

### B.

Cofield next argues that the government failed to prove a violation of supervised release. The government alleged six violations of Cofield's supervised release conditions in its original petition and then amended its petition to include another two. The district court's order did not make clear exactly how many violations were found to be proved. The order quoted five of the original six allegations from the government's petition and stated that they contained an "accurate summary" of Cofield's conduct while on supervised release. The district court put Mr. Cofield's post-release behavior into the larger context of his criminal history and found that the government had proved "the violations."

Cofield's plan to defraud the *Chattanooga Times* was one in a long line of baseless lawsuits filed in attempts to win money judgments or settlements where none were legitimately due. The presentence report prepared for Mr. Cofield details over one hundred suits filed in the Northern and Southern Districts of Alabama. Some of these have involved similar plots with false obituaries; in one he was able to coax a $1,000 settlement from *The Atlanta Journal-Constitution*. Others include false claims of misconduct against the Alabama Department of Corrections, where he was incarcerated, and a personal injury suit against Marriott Hotels claiming seafood poisoning at a time when he was also imprisoned.

Because a district court need find only a single violation to revoke a criminal defendant's supervised release, *see* 18 U.S.C. § 3583(e) (2000), this opinion will address only one of the violations in detail to illustrate the appropriateness of the district court's findings. The four other allegations quoted by the district court will receive summary treatment.

The third standard condition of Cofield's supervised release reads, "The defendant shall . . . follow the instructions of the probation officer." Cofield's probation officer told him to inform the officer before filing any lawsuits. The officer did not prohibit Cofield from filing lawsuits entirely, but merely to keep him advised when he did so. During his time on supervised release, however, Cofield initiated suits against McDonald's restaurant and seventeen Maryland state court judges, and proceeded with a suit against Merrill Lynch, without informing the probation officer of his plans.

The district court also found that Cofield had violated supervised release conditions by fraudulently misrepresenting himself to be a doctor, failing to maintain gainful employment, failing to notify his probation officer within seventy-two hours after being contacted by the FBI, and failing to follow other instructions of his probation officer.

These violations, considered in conjunction with Cofield's criminal history, support the district court's revocation of his supervised release.

### C.

Cofield also contends that his probation officer had no authority to file a petition to revoke his supervised release. He relies on a single opinion from the Eastern District of Arkansas which states that only the United States Attorney, not probation officers, may petition the district court for revocation of a criminal defendant's supervised release. *See United States v. Jones*, 957 F.Supp. 1088 (E.D. Ark. 1997). While this Court has not ruled on this issue, two other circuits and three district courts have decided the question, and they have all disagreed with *Jones*. *See United States v. Mejia-Sanchez*, 172 F.3d 1172, 1174 (9th Cir. 1999); *United States v. Davis*, 151 F.3d 1304, 1307 (10th Cir. 1998); *United States v. Burnette*, 980 F.Supp. 1429, 1434 (M.D. Ala. 1997); *United States v. Berger*, 976 F.Supp. 947, 949-50 & n.4 (N.D. Cal. 1997); *United States v. Wilson*, 973 F.Supp. 1031-33 (W.D. Okla. 1997).

The Tenth Circuit held that the filing of revocation petitions did not exceed the scope of the probation officer's statutory duty to "report the conduct and condition [of a person on supervised release] to the sentencing court." *Davis*, 151 F.3d at 1307 (quoting 18 U.S.C. § 3603(2)). In fact, the district court, not the probation officer or the United States Attorney, ultimately determines whether revocation proceedings will actually be initiated. *See id.* In filing a petition to revoke supervised release, the probation officer merely acts as an agent for the district court and gives the court the information necessary to make that determination. *See id.*

This reasoning is persuasive, and we adopt the same rule for this circuit.