**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Karl WINGO, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Brett Lang, Defendant–Appellant.**

**Nos. 01–1669, 01–1961.**

United States Court of Appeals,
Sixth Circuit.

Sept. 9, 2003.

Wayne F. Pratt, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Patricia A. Maceroni, Mt. Clemens, MI, Brett Lang, pro se, Lexington, KY, for Defendant–Appellant.

Before MERRITT and BATCHELDER, Circuit Judges; and DUPLANTIER,* District Judge.

BATCHELDER, Circuit Judge.

Appellants Karl Wingo and Brett Lang, co-conspirators convicted at trial of several drug-related crimes, are before us again,

this time raising issues pertaining to their resentencings. For the reasons stated below, we affirm the district court's disposition of their respective claims.

## I. Background

Wingo and Lang were named in a forty-eight count superceding indictment that charged thirteen individuals, including themselves, with a variety of drug and drug-related crimes. From approximately 1989 until 1991, Wingo and Lang led a heroin and cocaine distribution ring in the Detroit area, and dealt in total quantities of those two drugs exceeding the equivalency of 47.000 pounds of marijuana.

The defendants were tried jointly before a jury and found guilty. *United States v. Lang,* No. 92–2487, 1994 U.S.App. LEXIS 31615, at *4, 1994 WL 629393 (6th Cir. Nov. 8, 1994). The jury convicted Wingo on eighteen different counts, including conspiracy to possess with intent to distribute cocaine and heroin, continuing criminal enterprise, aiding and abetting in the distribution of a controlled substance, possession with intent to distribute, use of a firearm in drug trafficking, possession of a firearm with an obliterated serial number, and money laundering. He was initially sentenced to prison for a total of 45 years. We upheld his sentence on appeal, *United States v. Lang,* No. 92–2487, 1994 U.S.App. LEXIS 31615, 1994 WL 629393 (6th Cir. Nov. 8, 1994), but the Supreme Court vacated and remanded his sentence for reconsideration in light of its rulings in *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), and *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *Wingo*

* The Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

*v. United States*, 517 U.S. 1116, 116 S.Ct. 1346, 134 L.Ed.2d 516 (1996) (mem.).

At Wingo's second sentencing before the district court, the court vacated and dismissed with prejudice the conspiracy conviction in light of *Rutledge,* and found that, in light of *Bailey,* the two § 924(c) convictions for use of a firearm in connection with a drug offense were obtained as a result of erroneous jury instructions. The district court, after discussing with the defendant the implications of resentencing, applied a two-point firearm enhancement and sentenced Wingo to 360 months. Wingo appealed this sentence, and we remanded the case to the district court because (1) the sentence meted out as a result of applying the firearm enhancement was greater than the sentence Wingo would have received had one of the two § 924(c) convictions stood: and (2) the district court could not vacate a conviction when the defendant did not ask for it to be vacated and when the result would be a greater sentence. *United States v. Wingo*, No. 97–2139, 1999 U.S.App. LEXIS 21015, 1999 WL (6th Cir. Aug. 27, 1999). We also instructed the district court to consider *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), on remand.

At his third sentencing hearing, Wingo asked the district court to vacate both § 924(c) convictions and sentence him accordingly; this request placed him in a posture akin to that at the second sentencing hearing when, over his objections at the time, the district court vacated both § 924(c) convictions and resentenced him with a two-point firearm enhancement applied to his offense level. The district court again sentenced Wingo to 360 months imprisonment.

The jury convicted Lang on four counts, including conspiracy to possess with intent to distribute, possession with intent to distribute, and use of a firearm during a trafficking offense. The district court sentenced him to 324 months for his involvement in the conspiracy, and another 60 months for his use of the firearm, for a total of 32 years. On direct appeal, we upheld Lang's conviction after considering and rejecting his challenge to the drug quantity determinations made by the district court at sentencing. *United States v. Lang,* No. 92–2487, 1994 U.S.App. LEXIS 31615, at *24–25, 1994 WL 629393 (6th Cir. Nov. 8, 1994).

Lang filed a § 2255 petition, and a panel of this court denied his claims of a violation of the Double Jeopardy Clause and ineffective assistance of counsel, stating that the record did "not reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Lang v. United States,* 1997 WL 123760 at 1 (6th Cir.1997) (unpublished).

Lang filed another § 2255 motion seeking to vacate his sentence and to reinstate a previously filed claim. We denied his motion to reinstate the old claim, but allowed him to raise before the district court only the issues of whether there was sufficient evidence to support his § 924(c) conviction, and whether the jury was properly instructed on that charge. Upon Lang's request and after warning him (as did the government) of the potential adverse effect of successfully challenging the § 924(c) conviction and being resentenced with a firearm enhancement applied, the district court vacated his § 924(c) conviction in light of *Bailey.* At resentencing, the court the applied the USSG § 2D1.1(b)(1) firearm enhancement, which bumped Lang into a sentencing range of "life." However, reluctant to punish Lang for raising a successful attack on his § 924(c) conviction and cognizant of his exemplary record as a prisoner, the district court departed (dras-

tically) downward to a sentence of 320 months: 240 months on Count One (conspiracy, carrying a 20 year statutory maximum) to be served consecutively to two concurrent 80 month sentences on Counts Ten and Twelve (possession with intent to distribute heroin and cocaine, respectively, each carrying a 20 year statutory maximum).

Both defendants timely appealed.

## II. Imposition of consecutive sentences

We first consider whether the district court, at Lang's most recent sentencing hearing, erred when it made Lang's sentence for conspiracy consecutive to his two concurrent sentences for possession with intent to distribute, particularly since the district court had, at Lang's first sentencing, run the sentence for conspiracy concurrently with the sentences for possession. After finding that the Guidelines stipulated a mandatory life sentence, the district court examined USSG § 5G1.2(d)[1] and *United States v. Page*, 232 F.3d 536 (6th Cir.2000), and determined that "the Court can and should impose the sentences on the Counts S10 and S12[2] consecutive to any sentence imposed on Count One to the extent necessary to produce a combined sentence equal to the total punishment. . . ." J.A. 674 (Sentencing Hearing). After the Third Circuit issued its decision in *United States v. Velasquez*, 304 F.3d 237 (3d Cir.2002), Lang informed us of that decision in a letter sent pursuant to Fed.

R.App. P. 28(j), and stated that the district court had the discretion under 18 U.S.C. § 3584 to group the counts as they were prior to re-sentencing. At oral argument, the issue was raised whether imposing Lang's sentences consecutively violated 28 U.S.C. § 994(*l*)(2),[3] the Constitution, or both, and we asked the parties to brief whether the issue was properly before us, and, if so, the impact of § 944(*l*)(2), the Constitution, and the Third Circuit's decision in *Velasquez* on the district court's imposition of consecutive sentences. In his post-argument brief, Lang asserts that the district court erred in failing to recognize that it had discretion to impose concurrent sentences, and that his due process rights were violated when the district court imposed consecutive sentences on counts for which it had previously imposed concurrent sentences.

In his original brief, his Rule 28(j) letter updating citations, and his post-argument brief, Lang does not argue that § 944(*l*)(2) prohibits the imposition of consecutive sentences: he merely uses that statute as authority, along with *Velasquez* and 18 U.S.C. § 3584 for the proposition that the district court had the discretion to impose concurrent sentences in spite of the language of USSG § 5G1.2(d). In fact, the district court appears to have believed that it had such discretion: "I believe that a fair reading of *Page* is at [sic] that panel at least believed that the Court *could* impose consecutive sentences even though the re-

---

**1.** USSG § 5G1.2(d) states, in pertinent part, that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."

**2.** The "S" designation refers to the Superceding Indictment, but is not used consistently by the district court. To avoid confusion, we

will refer to the counts as they are actually denominated in that indictment, i.e., as "Count Ten," etc.

**3.** 28 U.S.C. § 994(*l*)(2) states that the Guidelines shall reflect "the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense or soliciting commission of an offense and for an offense that was the sole object of the conspiracy or solicitation."

sult of the imposition of the consecutive sentences would result in a sentence greater than the maximum on Count One." J.A. 669 (Sentencing Hearing) (emphasis added).

■ The district court's decision on whether to impose consecutive or concurrent sentences is reviewed for an abuse of discretion, *United States v. Lawson,* 266 F.3d 462, 467–68 (6th Cir.2001), although the determination of what § 5G1.2 requires is a pure question of law that we review de novo. *United States v. Graham,* 327 F.3d 460, 464 (6th Cir.2003). In *Graham,* we implicitly rejected the holding of *Velasquez,* 304 F.3d at 243–44—that the district court has discretion to impose consecutive or concurrent sentences under § 5G1.2—and held with most of our sister circuits that § 5G1.2(d) mandates the imposition of consecutive sentences when its terms are met. 327 F.3d at 465–66; *see also United States v. Price,* 265 F.3d 1097, 1108–09 (10th Cir.2001) (listing other circuits holding the same), *cert. denied,* 535 U.S. 1099, 122 S.Ct. 2299, 152 L.Ed.2d 1056 (2002); *United States v. White,* 238 F.3d 537, 543 (4th Cir.), *cert. denied,* 532 U.S. 1074, 121 S.Ct. 2235, 150 L.Ed.2d 225 (2001); *United States v. Kapaev,* 199 F.3d 596, 598 (2d Cir.1999), *cert. denied,* 529 U.S. 1081, 120 S.Ct. 1705, 146 L.Ed.2d 508 (2000); *United States v. Saccoccia,* 58 F.3d 754, 787 (1st Cir.1995); *United States v. Kleinebreil,* 966 F.2d 945, 952 (5th Cir. 1992). Because USSG § 5G1.2(d) requires the district court to impose consecutive sentences, it did not err.

Lang also challenges the imposition of consecutive sentences by arguing that the district court violated the Supreme Court's admonition in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Specifically, Lang argues that the district court's finding of drug quantities not alleged in the indictment or submitted to a jury, which pushed him into a sentencing range of "life" under the Guidelines and therefore triggered § 5G1.2(d) upon resentencing, was erroneous insofar as it permitted an "end run around the constitutional mandates of *Apprendi*" by increasing Lang's total sentence above the 20–year statutory maximum for conspiracy.

■ Because Lang failed to raise an objection to the imposition of consecutive sentences at his resentencing hearing, we review for plain error only.[4] Fed. R.Crim.P. 52(b); *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Though Lang presents a clever challenge to his consecutive sentences, he can show no *Apprendi* error because the district court's imposition of each sentence was within the statutory maximum for that count. *See United States v. Davis,* 329 F.3d 1250, 1254 (11th Cir.2003) (per curiam) ("The rule in *Apprendi* only applies where a defendant is sentenced above the statutory maximum sentence for an offense. *United States v. Sanchez,* 269 F.3d 1250, 1268 (11th Cir.2001) (en banc). *Apprendi* does not prohibit a sentencing court from imposing consecutive sentences on multiple counts of conviction as long as each is within the applicable statutory

---

4. Lang claims that he "has objected to the amount of drugs attributed to him consistently through-out [sic] his litigation. He contested the amounts at his original sentencing hearing and on direct appeal to this Court. Therefore, this review is not limited by a plain error standard." However, the issue is not drug quantity, and even if it were, there is no allegation or record that Lang lodged any objection at his resentencing.

maximum."); *Price,* 265 F.3d at 1109 (noting that "those courts holding that § 5G1.2(d) is mandatory have routinely concluded that an *Apprendi* error did not affect the defendant's substantial rights").

## III.  Other *Apprendi* error

Both Wingo and Lang claim that the district court violated *Apprendi* in sentencing them.  Specifically, Wingo complains that the district court, upon sentencing him for his role in a continuing criminal enterprise ("CCE"), utilized drug quantities not submitted to a jury and proved beyond a reasonable doubt, thereby increasing his sentence beyond the statutory minimum for CCE. Given that a conviction for CCE carries a statutory minimum of 20 years and a maximum of life, *see* 21 U.S.C. § 848(a), Wingo's claim is wholly without merit because he received a sentence less than the statutory maximum. *See United States v. Burns,* 298 F.3d 523, 544 (6th Cir.2002) ("*Apprendi* [does not] apply where a fact not found by the jury increases the lower limit of the sentencing range, as long as the sentence actually imposed is less than the upper limit of the range.").

Lang's complaint that he was charged and sentenced by the district court with violating 21 U.S.C. §§ 841(b)(1)(A), but that no drug quantities were listed in the indictment in violation of *Apprendi,*[5] is jurisdictionally barred.  The claim raises issues that were presented in Lang's "Motion to Set Aside Convictions," which was voluntarily dismissed by Lang while it was pending before this court, and is outside the scope of the issues that we granted Lang permission to pursue in his successive habeas petition.

## IV.  Double jeopardy

Wingo argues that the district court violated the Double Jeopardy Clause by sentencing him both on the continuing criminal enterprise count and the conspiracy count, and levying a $50 special assessment for each count.  Pursuant to Supreme Court precedent, we have held that "a defendant cannot be subjected to cumulative punishments for violations of both conspiracy under § 846 and CCE under § 848."  *United States v. English,* 925 F.2d 154, 160 (6th Cir.1991).  The district court denied Wingo's motion to bar sentence pursuant to double jeopardy on the grounds that the district court did not, in fact, levy the assessment (or impose a sentence) on the dismissed Count One (conspiracy), but instead levied the $50 charge on Count Forty–Seven (unlawful use of a telephone. for which Wingo was convicted), even though that count was not mentioned orally from the bench.

The factual basis for the district court's ruling is confirmed by the Amended Judgments of September 25, 1997, J.A. 178–83, and May 10, 2001, J.A. 187–93.  Wingo asserts that "it is apparent from the record, Defendant was not, for reasons unknown to the Defendant, ever sentenced or ordered to pay a $50 assessment fee for count S47." Wingo Brief at 16.  However, the February 1993 sentencing report shows that Wingo was charged the $50 assessment fee for Count Forty–Seven at the time of his first sentencing.  He was sentenced and assessed a $50 fee on Count Forty–Seven again at both of his subsequent resentencings.

Pointing to the fact that the district court did not mention Count Forty–Seven[6] from the bench at any sentencing hearing,

---

**5.**  21 U.S.C. § 841(b)(1)(A) includes drug quantity as an element of the offense.

**6.**  At sentencing, the district court did mention "Count S45," a count identical to Count Forty–Seven except for the fact that the telephone was used at different times in the two counts.

Wingo argues that no sentence was imposed on that count because "pronouncement of sentence represents the judgment of the court and that the order of judgment is merely evidence of the sentence." *Sasser v. United States*, 352 F.2d 796, 797 (6th Cir.1965). Courts have interpreted this statement to mean that while "an orally pronounced sentence controls over a judgment and commitment order when the two conflict, ... the judgment and commitment order is evidence which may be used to clarify the sentence" when the oral sentence is ambiguous. *United States v. Myers*, 1993 WL 158488 (W.D.Mich.), *rev'd on other grounds*, 993 F.2d 1548 (6th Cir. 1993); *see also United States v. Cofield*, 233 F.3d 405, 406–07 (6th Cir.2000) (characterizing the above interpretation as "widely-accepted").

■ In *Cofield*, the district court orally sentenced the defendant to a term of imprisonment, but failed to mention during the proceedings a sentence of supervised release, even though the Guidelines required the court to impose a term of supervised release. 233 F.3d at 406. The court did impose a term of supervised release in the *written* judgment. *Id.* at 407. On appeal, we stated that

> [t]o the extent that the district court erred in its omission, the error was harmless; and was corrected later the same day when the written judgment and commitment order was filed in the district court. Unfortunately, such errors can easily be made in the confusion of a district court docket that will often bring many defendants before the court in succession. Allowing Cofield to profit from this kind of mistake would itself be a serious error.

*Id.* The same could be said of allowing Wingo to profit from the failure of the district court to mention Count Forty–Seven from the bench at the sentencing hearing. Wingo was convicted on Count Forty–Seven, and the district court noted that it was required by law to impose a sentence for that count. The court's failure to mention Count Forty–Seven from the bench does not give Wingo grounds to receive a $50 reduction in the special assessment he must pay.

## V. *Richardson* error

At trial, Wingo was convicted for participation in a continuing criminal enterprise ("CCE") under 21 U.S.C. § 848. Subsequently, Counts One (conspiracy to distribute), Eighteen and Twenty (both firearms charges) were dismissed. After the Supreme Court issued its decision *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (explaining that a jury in a CCE case must find unanimously not only that a defendant engaged in a continuing series of violations, but also which individual violations comprised the continuing series), we instructed the district court to consider whether its jury instructions were erroneous in light of that decision. *United States v. Wingo*, No. 97–2139, 1999 U.S.App. LEXIS 21015, at *6–7, 1999 WL 685939 (6th Cir. Aug. 27, 1999). The district court held that it had erred in failing to instruct the jurors that they must agree unanimously about which counts predicated the continuing criminal enterprise as required by *Richardson*, but held that its error was harmless because the jury still found unanimously that Wingo was guilty of five applicable predicate offenses,[7] and the gov-

---

**7.** The relevant offenses of which Wingo was convicted, named specifically in Count Two for the jury to consider as predicate offenses to CCE, were the following: Count One (con-

spiracy to distribute), Counts Three and Four (aiding and abetting distribution of heroin), Count Ten (possession with intent to distribute heroin), and Counts Forty–Five and For-

ernment presented sufficient evidence that those offenses were all in furtherance of the same drug criminal enterprise. J.A. 323–33 (Opinion).

■ On appeal, Wingo argues that the CCE conviction should be vacated because the jury instructions were erroneous, and that error caused harm. The government argues that the review of this claim is barred by Fed.R.Crim.P. 30 because Wingo failed to object to the jury instructions at trial. In *Rattigan v. United States*, 151 F.3d 551, 555–56 (6th Cir.1998), we considered on habeas review a challenge to jury instructions that were rendered erroneous when the Supreme Court handed down its decision in *Bailey*, and held that there was cause to review for error because Rattigan could not have objected to the instructions at trial on the grounds of *Bailey* since *Bailey* had not yet been decided. For the same reason, Wingo's claim is not barred by his failure to object.

We review jury instructions for plain error. *United States v. Taylor*, 102 F.3d 767, 770–71 (6th Cir.1996) (considering on remand jury instructions to which the defendant had not objected, but which became erroneous in light of *Bailey*). Finding plain error requires a court to make three determinations:

> First, it must conclude that the district court committed unwaived error. Second, the error must be plain, that is, clear and obvious under current law.

Third, the court must find that the error affected a substantial right of the defendant by prejudicially influencing the outcome of the district court proceedings. Where these conditions are met, the court will find plain error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 769–70 (internal citations and quotations omitted). In reviewing jury instructions for plain error, we apply the law as it exists at the time of appeal. *Id.* at 771.

■ We need not reach the question whether the jury instructions were clearly erroneous under *Richardson*, because we think it is clear that the instructions, even if erroneous, did not "prejudicially influenc[e] the outcome of the district court proceedings." *Id.* at 770. Wingo claims that the jury should have been instructed, in addition to being told that it had to find unanimously against him on the individual counts, that it also had to find unanimously that at least three of those offenses were committed pursuant to a CCE.[8] Assuming that the jury had been given such instructions, there is no doubt that the outcome would have been the same.

The jury unanimously found Wingo guilty on five counts that were specifically listed in Count Two as predicate offenses for a CCE conviction. Each count specifically alleged that the unlawful activity con-

---

ty–Seven (unlawful use of a telephone). J.A. 139–40 (Superseding Indictment). Wingo was acquitted on Count Forty (unlawful use of a telephone), which was also named in Count Two as a predicate offense. Both the district court in its opinion and Wingo in his brief list incorrectly which counts were listed as predicate offenses in Count 2 because, though they claim otherwise, they focused on the original indictment instead of the superceding indictment.

8. Wingo also argues that Counts Three and Four (aiding and abetting distribution) do not carry felony penalties as required by 21 U.S.C. 848(c)(1), and hence cannot count towards predicate CCE offenses. In fact, 18 U.S.C. § 2, the aiding and abetting statute, carries no penalties of its own, but simply provides that one who aids or abets an offense against the United States is punishable as a principal. Counts Three and Four allege that Wingo aided and abetted an unindicted individual who violated 21 U.S.C. § 841(a)(1), which does carry a felony penalty.

stituted, or was taken in furtherance of, drug trafficking. Moreover, the jury found a common connection among the individual predicate offenses when it convicted Wingo of conspiracy. Though the conspiracy conviction was eventually vacated in light of *Rutledge,* the fact of the conviction is evidence that the jury believed that Wingo was involved in more than just isolated transactions. *See Murr v. United States,* 200 F.3d 895, 906–07 (6th Cir.2000) (finding *Richardson* error on a CCE conviction harmless when the jury unanimously convicted the defendant of the predicate offenses constituting the CCE, and "where the trial evidence made clear that the predicate narcotics violations were part of a 'continuing series' ").

## VI. Sufficiency of the indictment

The government failed to mention in Counts Twenty–Six through Thirty–Three of the superceding indictment, which allege violations of a federal money laundering statute,[9] that a connection to interstate commerce is an element of the crimes charged in those counts. Wingo claims that the indictment is therefore jurisdictionally defective, and challenges the ability of the Grand Jury to issue the indictment on Counts Twenty–Six through Thirty–Three since the Grand Jury was not informed that the alleged money laundering must have had an effect on interstate commerce. Wingo admitted that he did not raise this issue in prior proceedings, and the government challenges his ability to do so now. We stated in *United States v. Gatewood,* 173 F.3d 983, 986 (6th Cir.1999):

> Under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, ... a defendant who contends that the indictment fails to establish jurisdiction or to charge an offense may raise that chal-

lenge at any time. *See United States v. Hart,* 640 F.2d 856, 857 (6th Cir.1981). But when an indictment is not challenged until appeal, as in this case, the indictment must be construed liberally in favor of its sufficiency. *See United States v. Gibson,* 513 F.2d 978, 979 (6th Cir.1975). "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime." *Hart,* 640 F.2d at 857–58.

■ The fact that a money laundering transaction must have a connection to interstate commerce is stated in the definition of "financial transaction" at 18 U.S.C. § 1956(c)(4). In this case, the indictment mentioned that Wingo had engaged in a financial transaction, but it did not list each statutory factor comprising a "financial transaction." In fact, there are eight separate defined terms in § 1956, some of which have quite lengthy and complicated definitions. Though each element of the crime "must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt," *Jones v. United States,* 526 U.S. 227, 232, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), Wingo has presented no authority for the proposition that each element of the crime must be accompanied by its statutory definition. To accept the logic of his argument and require the government to include, when applicable, the statutory definition of each element of a charged offense in an indictment would eviscerate the requirement of Fed. R.Crim.P. 7(c)(1) that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

---

9. 18 U.S.C. § 1956.

Moreover, Wingo cannot show that he was prejudiced by the failure of the indictment to mention the necessary connection between his activities and interstate commerce. At trial, the court instructed the jury that the financial transactions at issue must have had an effect on interstate commerce, J.A. 549–50 (Trial Transcript), and Wingo was convicted unanimously on the money laundering counts. As the government notes in its brief, "[s]ince the evidence was sufficient for 12 out of 12 trial jurors to find guilt beyond a reasonable doubt, then the defendant's claim that the evidence was insufficient to convince 12 out of 23 grand jurors to find probable cause is unsupported." United States Brief at 37.

## VII. "Aiding and abetting" jury instructions

Wingo claims that the district court erred when it instructed the jury with regard to the charges of aiding and abetting the distribution of a controlled substance that "if the acts or conduct of an employee or other agent are willfully ordered or directed, or willfully authorized or *consented to* by the accused, then the law holds the accused responsible for such acts or conduct the same as if ... personally done by the accused." J.A. 547–48 (Trial Transcript) (emphasis added). Earlier in the aiding and abetting instructions, the district court told the jury that, to convict the defendant of aiding and abetting, the government must prove beyond a reasonable doubt: "first, that the crime was committed; second, that a defendant helped commit the crime charged; third, that such defendant intended to help commit the crime charged. It is not enough if the Defendant knew about the crime or was there to help. He must have intentionally done something to help." J.A. 547.

■ Since Wingo admittedly failed to object to the jury instructions at trial, we review for plain error only, and must "consider whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." United States v. Sanderson, 966 F.2d 184, 187 (6th Cir.1992). The instructions in this case did not produce a miscarriage of justice. First, the district court made it clear that Wingo had to have intentionally *done* something to help. The instructions to which Wingo objects do not encompass a general failure to object to the commission of a crime regardless of who may have committed that crime, but include his giving consent to the acts of an agent or employee. In other words, once Wingo consented to an act of one of his agents— over whom, by definition, he exercised control—he could not escape liability as an aider and abettor by eschewing responsibility for his agent's actions.

Second, evidence produced at trial showed that Wingo had discussed selling heroin to an undercover officer, but that one of his agents, who identified himself as one of "Karl's boys," made the actual delivery of the drugs. The jury certainly could have inferred that Wingo aided and abetted the drug transaction in that instance. Taken as a whole, the instructions are not erroneous, and certainly do not result in the sort of miscarriage of justice that would be required for us to overturn Wingo's conviction on appeal.

## VIII. Application of a firearm enhancement

Both Wingo and Lang were convicted of violating 18 U.S.C. § 924(c) by using a firearm during a drug trafficking offense, but those convictions were vacated after the Supreme Court handed down its decision in *Bailey*. At resentencing, the district court applied a 2–point enhancement

under USSG § 2D1.1(b)(1) for use of a firearm in connection with drug trafficking to each defendant, and each defendant claims on appeal that there was not a sufficient nexus between the drug activity and his use of a firearm to justify the enhancement. The Guidelines state that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.3.). We review for clear error the district court's finding that the defendants possessed weapons in connection with their illegal drug trafficking activities, *United States v. Maliszewski,* 161 F.3d 992, 1017 (6th Cir.1998), and constructive possession is sufficient to support the enhancement. *United States v. Pruitt,* 156 F.3d 638, 649 (6th Cir.1998).

▇ Evidence presented at trial showed that Wingo and Lang, when making a purchase of $18,000 of heroin on one occasion, carried a firearm with them in the passenger compartment of their vehicle. Lang testified that the gun was present for protection during the deal. A third coconspirator present at the drug deal testified that Wingo removed the gun from a satchel and placed it on the center console of the car before the deal, and that Lang placed the gun into the satchel with the recently-purchased drugs after the deal. A jury found beyond a reasonable doubt that both Wingo and Lang had used a firearm during a drug trafficking offense. There is no basis upon which we could find clear error in the district court's determination that the gun was connected with the offense.[10]

10. The district court also based its imposition of the firearm enhancement upon the recovery of guns found during the execution of search warrants. Because we find that the defendants' possession of a gun during a drug deal is sufficient grounds for the district court to apply the enhancement, we need not address whether the other grounds relied upon by the court were also sufficient.

## IX. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

