NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0277n.06

No. 20-5703

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jun 07, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| HENRY SHELL, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GRIFFIN, WHITE, and READLER, Circuit Judges.

PER CURIAM. Henry Shell appeals the district court's judgment revoking his supervised release. As set forth below, we **AFFIRM** the district court's revocation judgment.

In 2008, Shell pleaded guilty to conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; distributing cocaine, in violation of 21 U.S.C. § 841(a)(1); brandishing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Shell to 84 months plus one day of imprisonment and three years of supervised release. Shell did not appeal.

Shell's initial three-year term of supervised release began in April 2013. In January 2015, the probation office alleged that Shell had violated the conditions of his supervised release by committing other crimes (distributing hydrocodone and possessing Suboxone) and using a controlled substance (Suboxone). At the revocation hearing, the district court found the charged violations by a preponderance of the evidence, revoked Shell's supervised release, and sentenced

him to 56 months of imprisonment and five years of supervised release. This court affirmed the district court's revocation judgment. *United States v. Shell*, No. 15-5185 (6th Cir. Jan. 28, 2016) (order).

Shell's second term of supervised release began in February 2019. In April 2020, the probation office alleged that Shell had violated a condition of his supervised release by committing another crime (second degree assault, in violation of Kentucky Revised Statutes § 508.020). At the revocation hearing, Shell admitted that he stabbed his son, Paul "P.D." Shell, with a knife but claimed that the stabbing was not intentional and, even if intentional, was justified. The district court found the charged violation by a preponderance of the evidence, revoked Shell's supervised release, and sentenced him to 37 months of imprisonment and two years of supervised release.

In this timely appeal, Shell argues that there was insufficient evidence to support the district court's revocation of his supervised release. A district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000). "We review a district court's decision to revoke supervised release for abuse of discretion, giving fresh review to its legal conclusions and clear-error review to its fact findings." *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009) (internal citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

The district court determined that Shell violated a condition of his supervised release by committing another federal, state, or local crime. *See* 18 U.S.C. § 3583(d). Under Kentucky law, "[a] person is guilty of assault in the second degree when . . . [h]e intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument." Ky. Rev. Stat.

§ 508.020(1)(b). Justification is a defense to that crime: "The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person." Ky. Rev. Stat. § 503.050(1); *see* Ky. Rev. Stat. § 503.020. The use of "deadly physical force," defined as "force which is used with the purpose of causing death or serious physical injury or which the defendant knows to create a substantial risk of causing death or serious physical injury," Ky. Rev. Stat. § 503.010(1), is justifiable "only when the defendant believes such force is necessary to protect himself against death, serious physical injury, kidnapping, sexual [assault], felony involving the use of force, or" if the "person against whom the defensive force was used was in the process of unlawfully and forcibly entering or had unlawfully or forcibly entered a dwelling, residence, or occupied vehicle." Ky. Rev. Stat. §§ 503.050(2), 503.055(1).

At the revocation hearing, multiple witnesses, including Shell, testified about the stabbing incident on April 6, 2020. P.D. and his wife, Hollie Shell, were living with Shell at the time of the incident. According to the testimony of P.D., Hollie, and Shell, a few days prior to the stabbing, there was an argument between P.D. and Shell during which P.D. picked up and wielded a knife that was laying on the kitchen table, after Shell allegedly reached for the knife. Shell alleges that P.D. brought his gun into the house during this argument but P.D. denies having done so.

Several witnesses gave conflicting testimony as to the events of April 6, 2020 that culminated in Shell stabbing P.D. The witnesses generally agreed that the confrontation started when Shell accused P.D. of changing the wifi password in the house. According to P.D., Shell threatened to kill P.D. and Hollie. At some point during the argument, P.D. retrieved his gun from his truck, went inside the residence, and pointed the gun at Shell, telling him to stay away and not come any closer. P.D. then went back outside and placed the gun inside his locked truck. Shell

followed P.D. outside and hit P.D. with his shoulder—a move described by some witnesses as a "shoulder check" or "football tackle." Shell and one of his neighbors (whose testimony the district court found unreliable) asserted that Shell merely bumped shoulders with P.D. while walking over to his neighbor's house, when trying to get through the narrow passageway where P.D. was standing between P.D.'s truck and the mobile home. According to Hollie, Shell said, "[t]hat will be the last time you point a gun at me, M.F," when he hit shoulders with P.D. After Shell hit shoulders with P.D., P.D. punched Shell in the head. According to multiple witnesses, Shell and P.D. exchanged punches, and Shell stabbed P.D. in the abdomen with a pocketknife. P.D. suffered an abdominal wound that was four inches deep and resulted in a two-day hospitalization.

After hearing the testimony by the witnesses and the arguments by counsel, the district court determined that the elements of assault in the second degree had been established by a preponderance of the evidence and that Shell had therefore violated a condition of his supervised release. With respect to Shell's justification defense, the district court found that, after P.D. removed himself from the residence and placed his gun in his truck, Shell did not have a reasonable belief that P.D. would use the gun to harm him, and thus did not have a "justified fear for his own safety at the time of the stabbing." The district court further found that Shell escalated the confrontation after it had died down by following P.D. outside, with the knife in his pocket, and ramming P.D. with his shoulder.

Thus, the district court concluded that the elements of Ky. Rev. Stat. § 508.020(b) were met because Shell utilized a dangerous instrument (the pocketknife) to inflict physical injury on P.D. The district court found that Shell had the requisite intent because he started the physical altercation by following P.D. outside and "ramming" him with his shoulder.

Shell argues on appeal that the evidence established that he had an imminent fear of harm from P.D. and had no intent to injure him with the knife. Under Kentucky law, justification is not a defense where "[t]he defendant was the initial aggressor" unless the defendant's "initial physical force was nondeadly and the force returned by the other is such that he believes himself to be in imminent danger of death or serious physical injury." Ky. Rev. Stat. § 503.060(3). It is also not a defense where "[t]he defendant, with the intention of causing death or serious physical injury to the other person, provokes the use of physical force by such other person."

Shell contends that he drew the knife only after being struck in the head and did so in an attempt to stop P.D. from inflicting further injury on him. But, as the district court pointed out, Shell followed P.D. outside and initiated the physical contact. Based on that evidence, which is undisputed, the district court did not clearly err in finding that Shell intentionally caused physical injury to P.D. without justification.

Accordingly, we **AFFIRM** the district court's revocation judgment.