

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2002

# USA v. Velasquez

Precedential or Non-Precedential: Precedential

Docket No. 01-1599

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Velasquez" (2002). *2002 Decisions.* Paper 590.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/590

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 20, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-1599 and 01-1820

UNITED STATES OF AMERICA,

v.

REYNALDO VELASQUEZ,
a/k/a REGGIE

Reynaldo Velasquez,

Appellant/Cross-Appellee

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 99-cr-00066-1)
District Judge: Honorable Edmund V. Ludwig

Argued July 16, 2002

Before: McKEE, WEIS, and DUHE,*
Circuit Judges.

(Filed: September 20, 2002)

Paul J. Hetznecker, Esquire
 (ARGUED)
1420 Walnut Street, Suit 911
Philadelphia, PA 19102

Attorney for Appellant/Cross-Appellee

_____

*Honorable John M. Duhe, Jr., United States Circuit Judge for the
Fifth Circuit Court of Appeals, sitting by designation.

Robert A. Zauzmer, Esquire
 (ARGUED)
 Assistant United States Attorney,
Senior Appellate Counsel
Patrick L. Meehan, Esquire
 United States Attorney
Laurie Magid, Esquire
 Deputy United States Attorney for
Policy and Appeals
Kathy A. Stark, Esquire
 Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

          Attorneys for Appellee/Cross-
          Appellant

OPINION OF THE COURT

WEIS, Circuit Judge.

The defendant in this case was convicted of a drug
conspiracy and use of a telephone in connection with the
trafficking. We conclude that defendant's assertions of trial
error lack merit and we will affirm the conviction. On the
government's cross-appeal, we are persuaded that the
District Court did not abuse its discretion in imposing
concurrent rather than the consecutive sentences arguably
provided in the Sentencing Guidelines. Accordingly, we will
affirm the judgment.

A jury convicted the defendant on one charge of
conspiracy to distribute more than five kilograms of cocaine
in violation of 21 U.S.C. S 846 and one count of use of a
communications facility in violation of 21 U.S.C.S 843(b).
From 1996 through October 4, 1998, defendant worked for
a large-scale organization distributing cocaine at the corner
of 8th and Tioga Streets in Philadelphia, Pennsylvania.
Defendant kept the street-level dealers supplied with
packages for sale and collected the proceeds. He then
delivered the money to his immediate supervisor or the
head of the organization. Defendant earned between $500

                              2


and $600 per week for his efforts. In carrying out his
duties, he made more than 100 telephone calls to a pay
phone located at the corner of 8th and Tioga Streets.

At trial, three co-conspirators testified to the defendant's
participation in the drug organization. Police surveillance
and recordings of the defendant's telephone calls
corroborated that testimony to some extent. Defendant was
seen frequently driving a grey Oldsmobile automobile
registered in his name to the corner site. He also used the
automobile to travel to other locations connected with the
organization's activities.

During presentation of the government's case, an ATF
agent testified about intercepting the defendant's telephone
calls, and described efforts to discover the defendant's
pager number. Objections to portions of this testimony as
hearsay were sustained by the District Court. Using a chart
that had been prepared based on evidence presented at the
trial, the agent testified about the composition of the
organization and defendant's position within the group.

After the jury had begun its deliberations, it sent a
question to the trial judge inquiring, inter alia, "is 50
kilograms of cocaine a significant part of the conspiracy? Is
it necessary to agree that 50 kilograms was sold to be guilty
of the conspiracy?" The judge then consulted with counsel.
Defendant's lawyer argued that the question should be

answered in the affirmative because quantity was an element of the offense. The prosecutor, however, contended that the 50 kilograms was only a sentencing factor. The judge then instructed the jury that quantity was not an element required for conviction.

In performing preliminary calculations for Sentencing Guideline purposes, the District Court held the defendant responsible for 60 kilograms of cocaine because of his involvement in the conspiracy. This estimation, together with other enhancements, resulted in a Guideline range of 292 to 365 months.

However, after the Guideline computations were determined but before sentence was imposed, the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000), holding that the quantity of drugs in cases of this

nature must be submitted to and determined by a jury. The trial judge, therefore, concluded that in light of Apprendi the statutory maximum of 240 months set out in 21 U.S.C. S 841(b)(1)(C), applied to the conspiracy conviction, rather than the Guideline computation of 292-365 months. The Court grouped the conspiracy with the communications offense, denied the government's request for consecutive sentences totaling 288 months, and directed incarceration for 240 months.1

The defendant has appealed his conviction and the government has cross-appealed the sentence.

The defendant contests several evidentiary aspects of his trial, the trial judge's finding that the amount of cocaine involved as to the defendant exceeded 50 kilograms, and the trial judge's failure to have the jury decide whether the amount of cocaine was more than 50 kilograms.

Because the defendant made no objections in the District Court, the plain error standard of Rule 52(b) governs. See Fed. R. Crim. P. 52(b); Johnson v. United States , 520 U.S. 461, 466-67 (1997); United States v. Adams, 252 F.3d 276, 278-79 (3d Cir. 2001).

I.

We will first consider the challenges to the testimony of the ATF agent based on the chart of the organization that showed defendant as a member. The use of summaries and charts is proper and may be put before a jury with limiting instructions. United States v. Kapinson, 743 F.2d 1450, 1458 (10th Cir. 1984); United States v. Winn, 948 F.2d 145, 157-59 (5th Cir. 1991) (summary/testimony charts are admissible and Rule 1006 should not be interpreted literally or restrictively as to the "voluminous document" requirement).

As noted earlier, the chart was based on testimony that

had been introduced into evidence and the exhibit therefore
_____

1. The maximum statutory sentence for the communications offense is 48 months. Adding the 240 months term for the conspiracy results in a maximum statutory sentence of 288 months.

4

acted as a summary. Kapinson, 743 F.2d at 1458; Winn, 948 F.2d at 157. Defendant did not object to the introduction of this evidence and under the applicable plain error standard, his challenge must be rejected. See Fed. R. Crim. P. 52(b); Johnson, 520 U.S. at 466-67; Adams, 252 F.3d at 278-79.

On cross-examination, the ATF agent stated that he had not been able to determine the name of the subscriber of a pager used by defendant. Having answered the precise question put to him, the agent then added that an employee of Express Paging, after studying a photograph, said defendant had been inside that store. Although this was hearsay, defendant did not move to strike the non-responsive portion of the answer nor request a curative instruction. In considering the totality of the evidence properly admissible at trial, this gratuitous answer was harmless and does not constitute grounds for reversal under the plain error standard. See id.

Similarly, the defendant did not object to evidence obtained from the Pennsylvania Bureau of Motor Vehicles demonstrating that he was the registered owner of the grey Oldsmobile. Admission of that evidence does not constitute plain error. See id. Nor was it plain error to admit material obtained by wire-taps. See id. Nor do we find that the entry of evidence from the pen-register, which was not objected to at trial, constitutes reversible error under the plain error standard. See id.

Defendant also challenges the District Court's finding that for Guideline purposes he be held responsible for between 50 and 150 kilograms of cocaine. We are satisfied that based on the evidence submitted covering the length of time defendant served in the organization, his participation in distribution, and the amount of cocaine sold, the sentencing judge was within his authority to find the amount involved exceeded 50 kilograms.

Defendant also raises an Apprendi challenge to the Court's failure to have the jury decide whether the amount of cocaine was more than 50 kilograms. It is somewhat curious that he raises that issue here. The judge's refusal to submit the quantity to the jury seems favorable to the

5

defendant because the ruling limited the possible maximum sentence to a lower level than that which would have been

applicable if the jurors had found that the amount of cocaine was in excess of 50 kilograms. We find no merit to the defendant's challenge.

In sum, we conclude that defendant has failed to demonstrate reversible error and, consequently, his conviction will be affirmed.

II.

Although the defendant has not mounted a strong case contesting his conviction, the government in its cross-appeal has presented a serious challenge to the sentence. Succinctly, the government insists that the district judge should have made the sentence for use of a communications device consecutive, instead of concurrent. Although the issue is straightforward, an analysis of its resolution is somewhat complex involving, as it does, the interplay between various provisions of the Sentencing Reform Act and the Sentencing Guidelines.

Under the Guidelines, the first question that arises when a defendant is convicted on a number of counts, is whether they should be grouped. The introductory comment in Part D of the Guidelines explains, "some convictions from a multi-count indictment are so closely intertwined with each other that increasing the Guideline range is not warranted. . . . To prevent multiple punishment for substantially identical offense conduct" multiple convictions should be grouped. See U.S.S.G. ch. 3, pt. D, intro. comment. "Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the Guidelines." Id.

If a defendant is convicted of only one count and the computation under the Guidelines exceeds that of the statutory maximum, then the statutory sentence is the "Guideline Sentence." See 5G1.1. However, if a defendant is sentenced on a number of counts (absent exceptions not relevant here), "the sentence imposed on each other count shall be the total punishment . . ." See 5G1.2.

6

Total punishment is calculated by combining the factors in the relevant sections of the Guidelines without respect to maximum statutory sentences. See 3D1.5. For example, if a maximum sentence is 100 months for a particular crime, but the guideline calculation for that offense, including various enhancements, such as recidivism, is 120 months, then the "total punishment" is 120 months.

According to the Guidelines, if the sentence for the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively to the extent necessary to make the final sentence "equal to the total punishment." See 5G1.2(d). However, the final sentence may not exceed the total of the maximum

sentences set by statute for each count. See id. Otherwise, in general, the sentences shall run concurrently. See id.

Trial courts traditionally exercised discretion to impose consecutive or concurrent sentences as required by the facts of the case. Congress restricted this power somewhat in the Sentencing Reform Act, but recognized that judges still retain substantial discretion. The Act provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively . . . ." 18 U.S.C.S 3584. Generally, sentences imposed at the same time run concurrently unless a statute mandates or the court orders otherwise.

In considering whether terms are to be consecutive or concurrent, 18 U.S.C. S 3584(b) requires the court to consider factors set out in 18 U.S.C. S 3553(a). That subsection lists matters traditionally used in sentencing and also includes a reference to "the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(l) . . . ." 18 U.S.C. S 3553(a)(4)(A).

In turn, 28 U.S.C. S 994(a)(l) instructs the Commission to insure that its Guidelines reflect the appropriateness of imposing an incremental penalty for each offense when "a

7

defendant is convicted of multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses . . . ." 28 U.S.C. S 994(l)(1)(A). The guidelines must also reflect "the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense . . . and for an offense that was the sole object of the conspiracy . . . ." 28 U.S.C. S 994(l)(2).

Section 994(a)(1)(D), however, also allows the Commission to promulgate guidelines for determining "whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively . . . ." 28 U.S.C. S 994(a)(1)(D).2

The combination of Guidelines and statutory provisions has led to a substantial number of opinions by the Courts of Appeals. Most of the appeals address situations where the sentencing judge imposed a consecutive, rather than a concurrent sentence. In many of these cases the practical result was imprisonment in excess of the statutory maximum for the principal offense. See, e.g., United States v. Stewart, 190 F.3d 389 (5th Cir. 1999) (92 month sentence imposed when the statutory maximum for the principal offense was 60 months); United States v. Chase, 296 F.3d 247 (4th Cir. 2002) (360 month sentence imposed when the statutory maximum for the principal offense was

240 months). See also United States v. Feola, 275 F.2d 216 (2d Cir. 2001) (24 month sentence for bank fraud offense was enhanced by conduct relevant to defendant's tax offense for which the statutory maximum sentence was 12 months); United States v. White, 240 F.3d 127 (2d Cir. 2001) (240 month sentence exceeded the statutory maximum sentence for any one of the crimes of which the defendant was convicted).

_____

2. In United States v. Willis, 881 F.2d 823, 826 (9th Cir. 1989), the Court commented that "[a]lthough section 994(a)(1)(D) apparently would allow the Commission to eliminate the discretion, section 994(b)(1) requires that the Commission's guidelines be consistent with the provisions of Title 18, which include section 3584(a). If the guidelines are to be consistent with Title 18, the discretion cannot be taken away." See also United States v. Nottingham, 898 F.2d 390, 395 (3d Cir. 1990); 28 U.S.C. S 994(b)(1).

A number of the Courts of Appeals have concluded essentially that the discretion allocated to the sentencing judge by section 3584 is subservient to the provisions of 5G1.2. However, in affirming sentences at variance with the Guidelines, these Courts have, in effect, implemented the discretion granted by section 3584 by relying on the departure power. See United States v. Quinones , 26 F.3d 213 (1st Cir. 1994) (upward departure because of excessive brutality by defendant); United States v. Kings , 981 F.2d 790 (5th Cir. 1993) (offense level did not adequately recognize seriousness of defendant's conduct).

In cases involving a conflict between section 3584 and 5G1.2, a majority of the Courts of Appeals have favored the Guidelines over the statutory grant of discretion. However, in United States v. Vasquez-Zamora, 253 F.3d 211, 214 (5th Cir. 2001), the Court recognized that the District Court had discretion to impose concurrent rather than consecutive sentences.

In United States v. Rahman, 189 F.3d 88, 156 (2d Cir. 1999), the Court considered the "tension" between section 3584 and 5G1.2, and conceded that sentences could run concurrently, but were limited by the departure authority. "Just as there is discretion to depart upward to impose consecutive sentences where the guidelines call for concurrency, we believe there is discretion to depart downward to sentence concurrently where the guidelines call for consecutive sentencing." Rahman, 189 F.3d at 157.

There is often little, if any, discussion in the case law of the fact that section 3584 recognizes the authority of the sentencing judge to impose concurrent or consecutive sentences without dependence on departure provisions in the Guidelines. Traditionally, judges possessed this power and because section 3584 restricts that authority, the limitation on the court's power should be carefully scrutinized and narrowly applied.

It is curious that appellate courts in affirming consecutive sentences in excess of that provided by the Guideline in multi-count cases have chosen to justify the result on departure grounds rather than forthrightly recognizing the district judge's right to do so under the

discretion implicit in section 3584. Some Courts have stated flatly that sentencing judges "must" follow 5G1.2 and impose consecutive terms. See, e.g. , United States v. White, 238 F.3d 537, 543 (4th Cir. 2001). However, section 3584 contains no such direction, but rather provides that courts "shall consider" factors listed in 28 U.S.C. S 3553(a). The Sentencing Reform Act does not require that the sentencing judge deciding upon concurrent or consecutive sentences "must follow" or even "defer" to those elements. Instead, the statutory obligation is to "consider" these factors.

In addition to the matters traditionally considered by sentencing judges, 18 U.S.C. S 3553 lists, as points to be considered, the kinds of sentences and ranges established by the Sentencing Commission as well as policy statements.3 It bears repeating that the sentencing judges' statutory obligation is to "consider" these factors, rather than subordinate or surrender their discretion as to whether consecutive or concurrent sentences should be imposed.

28 U.S.C. SS 994(a)(l) & (l)(2) instruct the Commission to design Guidelines that affect the appropriate use of multiple counts committed at different times, and the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiracy to commit an offense and for an offense that was the sole object of the conspiracy. Nevertheless, Courts that have insisted that sentences for multiple group counts must be consecutive to achieve "total punishment" have rejected section 994(l)(2) as a prohibition on consecutive sentencing for conspiracies and the underlying substantive offenses. See United States v. Kapaev, 199 F.3d 596, 598 (2d Cir. 1999) (holding that

_____

3. One Court remarked that this reference to the Guidelines "incorporates [its] own procedures for departing . . . [and thus] avoids a 'loophole' which the district courts might use to second-guess the Sentencing Commission." United States v. Pedrioli, 931 F.2d 31 (9th Cir. 1991) (case remanded because reasons for imposing consecutive sentences might not be grounds for departure). The concern should have been over infringement of the sentencing court's statutory discretion by Guidelines, rather than a misplaced misgiving over a"loophole," which amounted to no more than the statutorily recognized authority of sentencing judges.

sentencing courts must impose consecutive sentences in

such circumstances); United States v. Kleinbreil , 966 F.2d 945, 952 (5th Cir. 1992) (same); United States v. Saccoccia, 58 F.3d 754 (1st Cir. 1995) (same).

Although we have some doubts that those decisions are in congruence with the congressional intent expressed in section 994(l)(2), we are not confronted with that matter here. We merely point out the anomaly that case law appears to give a very restrictive meaning to 28 U.S.C. SS 994(a)(1) & (l)(2), but nevertheless construes section 3584 to diminish the power of the sentencing judge.

The commentary to Part D of the Guidelines observes that grouping is employed "[i]n order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct . . ." U.S.S.G. ch.3, pt. D, intro. comment. The commentary also observes that some offenses are so clearly intertwined with others that the Guideline ranges should not be increased. Id.

Chase discusses the conflicting concepts of grouping and the use of consecutive sentencing sometimes referred to as "stacking." The Court concluded that at least in the factual circumstances there, de-grouping was permissible in order to impose consecutive sentences under 5G1.2. Chase, 296 F.3d at 250-51. However, the Court did not discuss the discretion granted in section 3584, nor whether the sentencing judge should consider the relationship of the various convictions within the group before "de-grouping." The Court noted a distinction between selecting the range and deciding on consecutive or concurrent sentences, but did not comment on the fact that although grouping only affects range, it is a determinate element in setting the length of the sentence.

As some Courts have read 5G1.2, if the total of the Guideline's computations exceeds the statutory maximum for the primary count, then sentences on the lesser counts must be consecutive to the extent necessary to achieve "total punishment." See United States v. McLeod, 251 F.3d 78 (2d Cir. 2001); United States v. White, 238 F.3d 537 (4th Cir. 2001); United States v. Diaz, 296 F.3d 680 (8th Cir. 2002).

11

In following that approach, however, there is a potential for conflict with the aims of Part D to prevent imposition of additional punishment for conduct inextricably intertwined with the principal offense. Grouping attempts to avoid a sentence that "piles on" imprisonment for conduct that makes up the principal offense, but was charged in separate fragments to increase the punishment potential. Familiar examples are separate counts for each phone call or letter in a fraud case.

The Guidelines can be seen as inconsistent in inveighing against excessive sentences, but abandoning that

admonition in 5G1.2 when the computation for the principal offense cannot be implemented because of the bar of a statutory maximum sentence. Through the use of the "total punishment" theory, consecutive sentences for the minor counts are used to impose a total sentence exceeding that authorized by Congress for the principal offense.

The parties have not cited nor has our research uncovered any precedent of this Court interpreting the interplay between section 3584 and 5G1.2. We have had some experience with 5G1.3 in determining whether concurrent or consecutive sentences apply when the defendant is already subject to an undischarged term of imprisonment.

In United States v. Nottingham, 898 F.2d 390, 391 (3d Cir. 1990), the defendant was on parole at the time he committed an offense. We concluded that the version of 5G1.3 then in effect failed to recognize the discretion granted the sentencing judge by section 3584. Nottingham, 898 F.2d at 392-94. Therefore, the Guideline was not applied.

The defendant in United States v. Holifield, 53 F.3d 11 (3d Cir. 1995), was sentenced to terms concurrent to those previously imposed in another district. In affirming, we observed that the district judge need not follow the methodology of 5G1.3, and was free to use other means, but should indicate the reason for selecting the sentence. Holifield, 53 F.3d at 16. We explained that 5G1.3 provides for discretion in the sentencing judge, and noted, "Furthermore, the government points out that this case

12

demonstrates the wisdom of leaving discretion in the hands of the district court." Id. at 15.

United States v. Higgins, 128 F.3d 138, 143 (3d Cir. 1997), required the District Court to apply the consecutive sentence provided by 5G1.3 unless on remand the defendant could provide sufficient reasons for downward departure. In Higgins, the defendant committed a crime while incarcerated in a state prison, unlike the situation in Nottingham where the defendant was on parole at the time of his offense. Although it agreed with Nottingham that a guideline cannot trump a statute with which it conflicts, Higgins harmonized the general discretion granted under section 3584(a) and the limitation of 5G1.3. Higgins, 128 F.3d at 141-42. Specifically, "5G1.3(a) is not in conflict with [section] 3584(a) merely because the Guideline limits sentencing discretion in the exceptional case of an offense committed while serving . . . a term of imprisonment." Id. at 142. See also United States v. Spiers, 82 F.3d 1274 (3d Cir. 1996) (court permitted to impose consecutive sentence because defendant "did not deserve" concurrent terms); United States v. Brannan, 74 F.3d 448 (3d Cir. 1996) (District Court had discretion to direct sentence to be wholly concurrent with previously imposed state term).

However, these cases do not control here because they do not involve grouping, nor a statutory maximum sentence.

In this case there is no dispute that the counts were properly grouped. As in almost all drug trafficking cases, the use of telephones is an integral part of the offense. Case law reveals the overwhelming number of convictions where telephone conversations were a significant evidentiary factor in obtaining convictions.

Although charging choices are the prerogatives of prosecutors, the grouping guidelines are designed to control the amount of punishment when excess counts are employed in an indictment. The communication charge here clearly covers conduct within the drug trafficking violation and indeed comes close to coming within the rule of merger applied to lesser included offenses.

This case illustrates the need for respecting the discretion of the sentencing judge preserved in section 3854. By

13

simply adding a count for conduct that is within the trafficking offense, the government puts 5G1.2 into play and effectively nullifies congressional judgment on the proper maximum sentence.

If only the drug trafficking conviction were at issue, here the "Guideline sentence" would be the statutory maximum of 240 months. Adding a consecutive sentence under 5G1.2 without consideration of other factors, is in conflict with the Guideline policy of imposing "incremental punishment 'only' for significant additional criminal conduct." No such "significant additional criminal conduct" exists in the case before us.

By imposing concurrent sentences as authorized by section 3854, the district judge carried out the Guideline policy of avoiding excessive sanctions caused by blindly allowing a legally distinct, but realistically indistinct, offense inherent in the principal count to gain sway. The district judge in this case described the sentence of 20 years as "a very long period of custody and in this instance constitutes just punishment." We agree.

The district judge also considered the use of concurrent sentences as a downward departure justified by the facts. He noted that the defendant was a low-level worker for the organization earning $500 to $600 per week, had no prior record, and the amount of cocaine actually supplied by him was far less than that attributable to him under the Guidelines as a member of the conspiracy. Although these might be adequate reasons for a departure, we need not use that basis for affirmance. We believe the better reasoning is to treat the sentence as a proper exercise of discretion under section 3854.

The sentencing judge fulfilled his obligation to"consider"

the ramifications of the Sentencing Guidelines listed in section 3553. Having done so in a thoughtful manner, he decided that the imposition of concurrent sentences resulted in a "just punishment."

We conclude that the sentencing judge properly exercised his discretion under section 3854 of the Sentencing Reform Act, and in accordance with the policy expressed in the

14

Guidelines grouping provisions, decided that concurrent sentences were appropriate.

Accordingly, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15