

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-4-2006

# USA v. Guzman

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4143

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Guzman" (2006). *2006 Decisions.* Paper 134.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/134

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4143
_____

UNITED STATES OF AMERICA,
                                        Appellee,

v.

MARIO GUZMAN,
                                        Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Crim. No. 01-cr-00679)
District Judge: Honorable John W. Bissell
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 28, 2006
_____

Before: FUENTES and GARTH, Circuit Judges, and POLLAK, District Judge[1]

(Opinion Filed December 4, 2006)
_____

_____

OPINION
_____

_____

[1]The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

Garth, Circuit Judge:

Mario Guzman appeals his criminal sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742(a). We will affirm.


I

From 1994 to March 2000, appellant Mario Guzman worked at Heckler & Koch (H&K), a federally licensed firearms distribution company in Virginia, eventually rising to the position of Warehouse Manager. At some point in 2000, Guzman began stealing pistols by disassembling them, hiding the parts on H&K's premises, and surreptitiously removing the parts at the end of each day. Pre-Sentence Investigation Report ("PSR") ¶ 42. His friend, David Martinez, told Guzman that Martinez knew people in the Dominican Republic who wanted to buy firearms and Martinez offered Guzman $10,000 per box of (approximately 40) firearms. *Id.* During the next few months, Guzman stole three boxes of .40 caliber, .45 caliber, and .9 mm firearms from the H&K Warehouse. *Id.*

Guzman received $30,000 from Martinez for approximately 125 guns, and spent the entire amount on clothing and entertainment. PSR ¶ 43. Martinez, in turn, sold one gun to Christiano Dacosta for $500 and recruited Dacosta to help him sell more guns. PSR ¶¶ 13, 16. By May 2003, only 40 of the guns had been recovered by law enforcement. PSR ¶ 19. Of that 40, at least four had been involved in violent crimes in northern New Jersey, including one homicide, another person shot, and a shoot-out with police in which a suspect was killed and a police officer shot. PSR ¶¶ 19-20, 22-23, 26. Other recovered guns had been

2

in the possession of drug dealers trafficking in substantial quantities of heroin and cocaine. PSR ¶¶ 19, 23-25.

In addition to trafficking in stolen firearms, Guzman seized upon another opportunity for criminal activity presented by is association with H&K. In March 1997, his supervisor, Kevin Wistner, approached Guzman about an insurance fraud scheme. Wistner gave Guzman the keys to his Land Rover and told him to get rid of the vehicle so Wistner could collect the insurance proceeds. PSR ¶ 30. Guzman was to remove the vehicle's stereo system as payment. *Id.*

Guzman drove the Land Rover from Maryland to Newark, broke one of its windows and poured lighter fluid inside, and set the vehicle on fire. PSR ¶ 31. Wistner filed a false report with the Maryland police, claiming the Land Rover had been stolen. PSR ¶ 32. Wistner received nearly $29,500 in compensation from the insurance carrier (most of which went to the car's lienholder). PSR ¶ 34-35. Guzman later returned the car stereo to Wistner, who paid him $3000 for his work. PSR ¶ 44.

Guzman was arrested in August 2000 and pleaded guilty to a two-count Information charging him with conspiracy to deal firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) ("count 1"), and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1341 ("count 2"). In Guzman's plea agreement, the parties stipulated that his offense level under the guidelines[2] for count 1 was 20, including enhancements under U.S.S.G. § 2K2.1(b)

---

[2] The PSR states that Probation used the 2002 version of the Guidelines, but the enhancements that it used indicates that in fact it was using the 2000 version, or possibly even

3

for having stolen approximately 135 firearms. App. 13. The parties also stipulated that Guzman's offense level for count 2 was 12, including enhancements under U.S.S.G. § 2F1.1(b) for the amount of loss and for more than minimal planning. In exchange, the government agreed to a three-level reduction for Acceptance of Responsibility under U.S.S.G. § 3E1.1. App. 13-14. The parties also stipulated that, if warranted, the government would move for a more lenient sentence per U.S.S.G. § 5K1.1. App. 10.

Martinez was arrested as well. After perjuring himself to the grand jury, he then agreed to plead guilty to one count of a three-count indictment charging him with conspiracy to deal firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 371. Martinez's plea agreement contains the same stipulations concerning this offense, his acceptance of responsibility, and the possibility of a § 5K1 letter if he provided substantial assistance, as in Guzman's plea agreement. The only difference was that Martinez also stipulated to a two-level enhancement for obstruction of justice.

Probation concurred with the stipulations in these two plea agreements and also found that both defendants were in Criminal History Category I. It calculated Guzman's total offense level to be 17, resulting in an advisory guidelines range of 24-30 months' imprisonment.[3] It calculated Martinez's total offense level to be 19, resulting in an advisory guidelines range of 30-37 months' imprisonment.

the 1998 version.

[3]This was error. Guzman's offense level should have been 18 and the advisory guidelines range 27-33 months' imprisonment. *See infra* note 6.

4

Guzman and Martinez were scheduled to be sentenced on the same day. The government submitted § 5K1.1 letters for both of them, but the letter on behalf of Martinez made clear that his cooperation proved to be more substantial than Guzman's. At Martinez's sentencing, the District Court adopted the advisory guidelines range of his PSR (30-37 months), then departed downward by three levels due to the § 5K1 letter, resulting in an advisory range of 21-27 months' imprisonment. The judge decided this range was inadequate to punish Martinez's conduct, and instead sentenced him to 36 months' imprisonment.

Next, at Guzman's sentencing hearing, Guzman's only objection to the PSR was a request not to apply the stipulated enhancement for more than minimal planning on count 2. The government erroneously represented that because of the grouping rules, this enhancement would have no difference on the pre-§ 5K1-adjusted advisory range, and the judge denied the objection on that basis,[4] also noting, though, that it could "take into account the nature and extent of the planning and the [arson-for-hire] scheme that led to the insurance fraud" when "weighing the factors under section 3553(a)." Supplemental App. 54. Because there were no other objections to the PSR, the District Court adopted its findings and conclusions, including the (erroneously calculated) offense level of 17. The District Court then considered the government's application for a "minimal departure" under U.S.S.G. § 5K1.1 to reward Guzman for "his limited cooperation," and also considered Guzman's request for probation. Supplemental App. 62-63. Instead of imposing a sentence, however,

---

[4]For an explanation of why the government was in error here, see *infra* note 6.

5

the court adjourned the hearing to permit the parties an opportunity to determine whether the defrauded insurance company had obtained any restitution from Wistner, the owner of the Land Rover.

When the sentencing hearing resumed a month later, the District Court elected to depart downward three levels due to Guzman's cooperation, resulting in a new advisory guidelines range of 15-21 months' imprisonment. The District Court then considered each of the § 3553(a) factors in turn,[5] including making a determination that the guideline sentence per § 3553(a)(4) was "woefully inadequate," and a determination that to "avoid [an] unwarranted sentencing disparity," it should consider the 36-month sentence it had imposed on Martinez for the same firearms offense. Supplemental App. 81-82.

Accordingly, the District Court sentenced Guzman to 36 months' imprisonment on count 1 and six months' imprisonment on count 2, to be served consecutively (and three years' supervised release on each count to be served concurrently). Supplemental App. 82-83. The District Court also ordered the mandatory restitution of $29,439.28, but waived interest, noting that he would have imposed a lengthier term of imprisonment but for the substantial restitution which was mandatory and "has its own penal impact." Supplemental App. 82-84. The Court also imposed a $200 special assessment.

The District Court granted Guzman's motion for leave to file a notice of appeal out of time. Martinez did not appeal his sentence.

---

[5]See *infra* Part V for a more detailed account of the judge's consideration of the sentencing factors here.

6

## II

Because none of the issues Guzman raises here were raised at sentencing, the District Court's action is reviewed for plain error. *See United States v. Couch*, 291 F.3d 251, 252-53 (3d Cir. 2002) (citing *United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001)). It is Guzman's burden to establish plain error. *See United States v. Olano*, 507 U.S. 725, 734-35 (1993). To do so, he must prove (i) that the court erred; (ii) that the error was obvious under the law at the time of review; and (iii) that the error affected substantial rights, that is, the error affected the outcome of the proceeding. *Id.* at 732. If Guzman can establish all three elements, this Court has discretion to award relief, but should only do so in cases of actual innocence or if the error "'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *Olano*, 507 U.S. at 732).

## III

In evaluating the § 3553(a) factors, particularly § 3553(a)(2)(A) ("the seriousness of the offense"), the District Court noted that the PSR provided evidence that a number of the stolen guns that had been recovered had been used in serious crimes in Newark. Guzman did not object at sentencing to the District Court's consideration of this information. Now, however, citing *Booker*, Guzman contends that it was error for the District Court to use this information to increase his sentence beyond the guidelines range because these facts were not reflected in a jury verdict or admitted by him. *See United States v. Booker*, 543 U.S. 220,

7

244 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.").

This argument ignores the remedial portion of the *Booker* opinion, in which the Court explains that as long as the guidelines are merely advisory, judges are free to continue their long-standing practice of relying upon information in PSRs, and explains that PSRs often contain information which is not available until after trial (i.e., information that could not possibly be included in a guilty plea or have been proved to a jury). *See id.* at 251. The *Booker* Court also explicitly preserved 18 U.S.C. § 3661, which states that "[*n*]*o limitation* shall be placed on the information concerning the background, character, and *conduct* of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Booker*, 543 U.S. at 251 (quoting 18 U.S.C. § 3661) (emphasis added).

Furthermore, a Sixth Amendment issue arises only where the sentencing court resolves a *disputed* issue of fact. *See, e.g.*, *United States v. Trala*, 368 F.3d 536, 547 n.15 (3d Cir. 2004) (noting that the relevant Sixth Amendment caselaw applies "only where there is a resolution of disputed issues of fact" and finding no violation where there was "no contested evidence" on the disputed matter), *vacated on other grounds*, 126 S. Ct. 1078 (2006). Here, Guzman never disputed any of the facts concerning the crimes committed with weapons he stole and trafficked.

8

In sum, it is clear there was no error, let alone plain error, in the District Court's consideration of this information.

IV

Guzman next objects that the District Court engaged in impermissible "double-counting." As recounted above, Guzman's base offense level on the firearms count was increased by six levels pursuant to U.S.S.G. § 2K2.1(b)(F) because the offense involved more than 50 firearms. *See also* App. 7, ¶ 2 (stipulating that the "number of firearms involved in this offense is approximately 135"). Then, at sentencing, when the judge evaluated the "seriousness of the offense" under 18 U.S.C. § 3553(a)(2)(A), he noted that only approximately 40 of the guns had been recovered, that there was evidence in the PSR that some of those 40 guns had been used in very serious crimes, and that a substantial number of these weapons were still unaccounted for. *See* Supplemental App. 79 ("[T]he seriousness, the danger, the devastation to people and their families that can be caused by firearms untraceable to the possessor under these circumstances, hardly need be emphasized."). This was one factor the Court used in deciding to impose a non-guideline sentence. Guzman claims that because the large number of guns involved was already taken into consideration in U.S.S.G. § 2K2.1(b)(F), it was error for the District Court to use that issue a second time, as justification to impose a non-guideline sentence.

Guzman's objection is unpersuasive. First of all, even the Commentary to the version of § 2K2.1 used by the District Court at sentencing expressly authorized an "upward

9

departure" if the "number of firearms significantly exceeded fifty." U.S.S.G. § 2K2.1 cmt. n. 16. Certainly 135 firearms signficantly exceeds 50. *See United States v. MacDonald*, 992 F.2d 967, 970-71 (9th Cir. 1993) (affirming two-level upward departure under Application Note 16 where defendant illegally sold 122 guns). Thus, even the Sentencing Commission itself contemplated that the enhancement under § 2K2.1 might be inadequate to account completely for the seriousness of a defendant's conduct.

Moreover, the extent to which a defendant, after *Booker*, can rely on the principle of avoiding double counting is minimal. In the pre-*Booker* regime, we explained that:

> The general framework for reviewing departures from the sentencing guidelines is by now settled. A district court must sentence within the applicable guidelines range 'unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence from that described.' 18 U.S.C. § 3553(b). This provision is mandatory. *Thus, if the circumstances relied upon by the district court to justify the departure were adequately considered by the Sentencing Commission, then its decision to depart must be reversed.*

*United States v. Kikumura*, 918 F.2d 1084, 1098 (3d Cir. 1990) (quotation and citation omitted and emphasis added). After *Booker* and its excision of § 3553(b), however, this principle is, at minimum, no longer absolute. Although sentences can still be reviewed for unreasonableness, after *Booker* sentencing judges are given a huge measure of freedom in deciding which factors should carry more weight in determining the appropriate sentence for any particular defendant. Here, per § 3553(a), the District Court was required to consider the "seriousness of the offense," and in so doing, found that the fact that Guzman facilitated the release of approximately 135 firearms into an area where they would likely be used in

10

dangerous crimes, made the conduct particularly serious. Thus, even if the Sentencing Commission had not explicitly authorized an upward departure here, in a post-*Booker* regime, there was no plain error in the sentencing court attributing additional weight to this factor.

Finally, even assuming this principle is still good law and that there was plain error here, Guzman cannot show that this error affected the outcome of the proceeding. The judge here considered a number of factors in deciding to impose a non-guideline sentence and the number of guns involved was hardly a decisive factor. And even if it did affect Guzman's substantial rights, a favorable exercise of discretion is not appropriate here, where Guzman is admittedly not innocent and where sentencing him to 36 months in jail for stealing guns from his employer and facilitating their illegal sale would not compromise "the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732).

V

Next, Guzman appeals his sentence as unreasonable. When an appeals court evaluates whether the sentence imposed by the district court was reasonable, the reviewing court asks first whether the sentencing court gave "meaningful consideration" to the factors listed in 18 U.S.C. § 3553(a), and then makes sure the sentencing court reasonably applied those factors to the facts of the case. *United States v. Cooper*, 437 F.3d 324, 329-32 (3d Cir. 2006). When the appeals court reviews whether the § 3553(a) factors were reasonably applied, a large

11

measure of deference is due to the sentencing court. Finally, it is the party challenging the sentence that bears the burden of showing unreasonableness.

As for the first prong, there can be no doubt that the District Court here meaningfully considered the § 3553(a) factors. The record of the sentencing demonstrates that the court went through each of the factors in turn. The court noted: (i) the seriousness both of the offense of facilitating the release of untraceable firearms into the community and the fact that insurance fraud "undermines the integrity [and] effectiveness" of an industry "[w]e all rely on . . . to safeguard us against property loss or other unforeseen events in our daily lives"; (ii) that this conduct "does not seem to be consistent with the life [appellant] previously led; (iii) the need to protect the public from Guzman and the disrespect for the law which his crimes indicate; (iv) that Guzman has a high school diploma and retained good jobs, such that vocational training was not "a high priority"; (v) that these are "two very separate deservable offenses," making consecutive sentences appropriate; (vi) that the calculated guideline sentence[6] is "woefully inadequate" here; (vii) the judge's belief that the culpability

---

[6]It appears that the guideline sentence in the PSR was incorrectly calculated, though the error is not material to this appeal for two reasons. First is the fact that Guzman does not raise the issue. Second, the error was in his favor. The PSR calculation erroneously omitted the enhancement for more than minimal planning on the arson/mail fraud count. Guzman had stipulated to this enhancement, which should have resulted in an offense level of 12 on that count. Because the offense level on the firearms count was 20, the 8-level difference between the two counts should have counted as a ½-unit under § 3D1.4(b), resulting in a combined offense level of 21. After deducting 3 points for Acceptance of Responsibility, Guzman's Total Offense Level of 18 would have meant an advisory guideline range of 27-33 months' imprisonment. Instead, as a result of the fact that the PSR forgot to add the 2-levels for more than minimal planning, the offense level for the arson/mail fraud count was 10 (not 12). Because there was more than an 8-level difference between the offense level for count one (20) and count two (10), the ½-unit under § 3D1.4(b) was eliminated, resulting in a combined offense level of 20. After

12

of Guzman and Martinez is comparable, "and to that extent at least the sentence here will serve the goal of avoiding unwarranted sentencing disparity"; and (viii) that because restitution was mandatory in this case, and in view of the fact that "restitution. . . has its own penal impact," the judge stated that he "has somewhat tempered the incarceration portion on the second count." Supplemental App. 78-82. In sum, it is clear that the District Court did "meaningfully consider" the relevant factors. And as for its determination that the advisory guidelines range was "woefully inadequate," the government points out that this range can, in fact, be so characterized, when it is taken into consideration both that this range was incorrectly calculated and that the correct range was higher, and also that Guzman's conduct merited enhancements for both Abuse of Trust and Arson, which were not added in the PSR but would have increased the guidelines range.

As for whether the District Court reasonably applied these factors to the facts of this case, it is clear that it did. Guzman's principal objection in this regard is due to the fact that the District Court sentenced Guzman to the same prison term as Martinez in order to avoid "unwarranted sentence disparities among defendants with similar records who have been

_____

deducting for Acceptance of Responsibility, the advisory guideline range for a Total Offense Level of 17 in Criminal History Category I was 24-30 months' imprisonment. Compounding this error is the fact that at sentencing, Guzman's counsel objected to the more than minimal planning enhancement and the government erroneously represented to the court that even if such enhancement were eliminated, the advisory guidelines range would not change. (In fact, as just detailed, it would change because the ½-unit adjustment would be eliminated.) The court denied the objection on that basis. Because the judge considered the incorrect guidelines range as the § 3553(a)(4) factor, and because that range was more favorable to Guzman than the correct one, we use the incorrect range in analyzing whether the sentence the judge imposed was unreasonable.

found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Guzman contends that he and Martinez were in fact not similarly situated and that to increase his sentence on this basis was in error. The District Court, however, found that the "culpability" of Guzman and Martinez was "comparable" because "each of them played an important role, although slightly different one[s]." Supplemental App. 82. Both Martinez and Guzman cooperated with the government, both received a 3-level downward departure for their cooperation, and both were in Criminal History Category I. Furthermore, although Martinez initially perjured himself before the grand jury, in the end Martinez's cooperation was of more value to the government than Guzman's was. Thus, Guzman has not shown that it was unreasonable for the District Court to determine they were similarly situated and sentence them accordingly in order to avoid unwarranted sentence disparities.

VI

Lastly, Guzman argues that it was error to impose consecutive sentences. As support, he cites U.S.S.G. § 3D1.4(c), which states that if the difference between two offense levels is greater than eight levels, then the count with the lower offense level "will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level." U.S.S.G. § 3D1.4(c). That is, Guzman maintains that because his offense level for count one was 20 and his offense level for count two was ten, the difference is ten, and per U.S.S.G. § 3D1.4(c), when the difference between offense levels is greater than eight, the count with the lower offense level cannot be used to

14

increase the offense level, but can be used to sentence at the higher end of the guidelines range.[7]

There was no error here. As this Court decided in *United States v. Velasquez*, 304 F.3d 237 (3d Cir. 2002), the Sentencing Reform Act "recognizes the authority of the sentencing judge to impose concurrent or consecutive sentences without dependence on . . the guidelines," but provides that "courts 'shall consider' factors listed in 18 U.S.C. § 3553(a)." *Id.* at 243 (quoting 18 U.S.C. § 3584(b)). Indeed, the Sentencing Reform Act states that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms may run concurrently or consecutively. . . . Multiple terms of imprisonment imposed at the same time run concurrently *unless the court* or the statute mandates that the terms are to run consecutively." 18 U.S.C. § 3584(a).

Here, the District Court exercised its discretion in imposing consecutive sentences. The two offenses at issue here are wholly unrelated. After considering the § 3553(a) factors, the judge concluded that consecutive sentences were appropriate to punish these "separate offenses." Supplemental App. 79. This was an appropriate and considered exercise of discretion; there was no plain error.

CONCLUSION

For the above reasons, we will affirm the sentence.

---

[7]As discussed *supra* footnote 6, the difference between the two offense levels, had count two been correctly calculated, actually was eight.