

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2009

# USA v. Reginald Young

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2352

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Reginald Young" (2009). *2009 Decisions.* Paper 1111.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2352
No. 08-2771
_____

UNITED STATES OF AMERICA

v.

REGINALD YOUNG,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00307)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
June 12, 2009

Before: McKEE, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: June 30, 2009)

_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge*.

In these consolidated appeals, Reginald Young challenges his judgment of conviction and sentence for drug-related offenses and his sentence for violating the terms of his supervised release. We will affirm.

I.

Because we write for the parties, we review only the essential facts and we do so in the light most favorable to the Government, as the verdict winner. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008).

Following a three-day jury trial, Young was convicted of conspiracy to distribute 500 grams or more of cocaine and 100 grams or more or heroin (in violation of 21 U.S.C. § 846), possession with intent to distribute 500 grams or more of cocaine (in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)), and possession with intent to distribute 100 grams or more of heroin (in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)). The Government's key witnesses at trial were Basilio Ramirez and Ricardo Rodriguez.

Ramirez testified that he was a courier for Abram Reimer, a drug trafficker in Fort Worth, Texas. Ramirez traveled from Texas to Philadelphia twice in July 2004 at Reimer's direction to exchange drugs with one of Reimer's customers. On both occasions, Ramirez met with a buyer whom he identified at trial as Reginald Young. On the first trip, Young introduced Ramirez to Rodriguez, whom Young identified as his brother.

2

After a successful sale in early July, Reimer asked Ramirez to make another delivery to Philadelphia later that month. While en route, Ramirez spoke to Young using code words common to the drug trade. When Ramirez arrived, he spoke to Rodriguez, who told him that Young wanted to meet him in a nearby Wal-Mart parking lot. Ramirez drove to the parking lot, where he saw Young seated in a blue Nissan Altima. Young invited Ramirez into the Altima where he instructed him to give the drugs to Rodriguez — who was parked in an adjacent car — in exchange for $60,000. Ramirez and Rodriguez made the exchange and were arrested by law enforcement agents who were waiting in a nearby vehicle. Police seized cocaine and heroin from Rodriguez's vehicle, as well as cash from a bag in Ramirez's car.

Rodriguez corroborated Ramirez's testimony, testifying that prior to this arrest he was working on Young's behalf. Rodriguez also testified that he often drove Young to meetings with Reimer in the Philadelphia area. After Rodriguez had moved to Florida, Young requested Rodriguez's help to conduct the sale that ultimately led to Rodriguez's arrest. Accordingly, Young deposited $500 in Rodriguez's bank account to buy a plane ticket to Philadelphia. Upon Rodriguez's arrival, Young put a bag filled with $60,000 in cash in Rodriguez's car and instructed him to go to the Wal-Mart parking lot, where Ramirez would be waiting. Young told Rodriguez to exchange the bag of money for the drugs in Ramirez's car and to bring the drugs back to Young's residence.

In addition to the testimony of Ramirez and Rodriguez, the Government presented phone records that revealed an extensive pattern of phone calls among Ramirez, Reimer, Rodriguez, and Young before and during July 2004. The calls — which were made from cell phones, residences, and hotel rooms linked to the four men — were traced to numbers found on both Ramirez and Rodriguez and in their cars at the time of arrest. In addition, Marjorie Goldman, a friend of Young's, testified that she had lent Young her blue Nissan Altima, which had a license plate that matched the one observed by police in the Wal-Mart parking lot during the July 30 transaction. Upon Young's arrest in August 2005, the keys to the Altima were in his possession and the car was parked near his home.

Following the verdict, Young moved for judgment of acquittal, or alternatively, a new trial. The District Court denied both motions and proceeded to sentencing. Young's base offense level was 32, which was increased by two levels to reflect his managerial role in the offense pursuant to § 3B1.1(c) of the United States Sentencing Guidelines (USSG). Young's criminal history category was V, yielding an advisory Guidelines range of 235 to 293 months. The District Court sentenced Young to 270 months imprisonment and five years supervised release.

Young's convictions for the drug-related offenses prompted the Government to petition for Young's revocation of supervised release on an earlier conviction for bank fraud. The District Court found Young in violation of the terms of his supervised release,

4

which produced a Guidelines range of 18 to 24 months. The District Court imposed a 12-month sentence to run consecutive to the sentence imposed for Young's drug convictions.

Young now appeals his conviction and sentence for the drug-related offenses as well as the sentence imposed for violating his supervised release conditions. [1]

## II.

Young first claims there was insufficient evidence to convict him on the drug-related offenses. Young bears a heavy burden in light of our "particularly deferential" standard of review in cases challenging the sufficiency of the evidence. *See United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). "[We] must sustain the verdict of a jury if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992).

Taking the evidence in the light most favorable to the Government, we find that a rational trier of fact could have found the essential elements of each of the crimes for which Young was charged.

## A.

Beginning with the conspiracy charge, we agree that the testimony of Ramirez and Rodriguez is sufficient to indicate that Young did not act alone in dealing with Reimer. Young paid for Rodriguez's plane ticket to Philadelphia, gave him money for the July 30

---

[1]We exercise appellate jurisdiction over Young's claims of trial error under 28 U.S.C. § 1291 and review his claim of sentencing error under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

transaction, instructed him where to meet Ramirez, and met with Ramirez himself to discuss the transaction just minutes before it happened. Although a simple buyer-seller relationship is insufficient to establish a conspiracy to distribute drugs, *see United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999), the evidence in this case — including the records of extensive phone calls among the participants — goes well beyond a buyer-seller relationship between Reimer and Young. The conspiracy included, at the very least, agents of both men.

Young argues that the Government could not prove the men had a "smoking-gun" conversation in which they agreed to sell drugs together. But such direct evidence is not required; "[t]he elements of conspiracy . . . can be proven entirely by circumstantial evidence." *See United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). The mountain of circumstantial evidence in the record implies that Young, Reimer, Ramirez, and Rodriguez had a unity of purpose, intended to achieve a common goal, and agreed to work together toward that goal. *See Gibbs*, 190 F.3d at 197. Accordingly, we will affirm Young's conspiracy conviction.

B.

Young also challenges his convictions for possession with intent to distribute cocaine and heroin, arguing that the Government could not prove that he possessed drugs or intended to distribute them.

With regard to possession, Ramirez testified that Young took possession of the drugs during the first transaction in early July 2004. Additionally, the drugs at issue in the July 30 transaction could be attributed to Young because Rodriguez was acting as Young's agent and co-conspirator when he took possession of them. In *United States v. Collado*, 975 F.2d 985 (3d Cir. 1992), we held that a defendant can be responsible for the quantity of drugs possessed by co-conspirators if possessing the drugs was (1) in furtherance of a jointly-undertaken activity, (2) within the scope of the defendant's agreement, and (3) reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake. *Id*. at 995. That standard is clearly met in this case. Young gave Rodriguez money to purchase drugs from Ramirez and instructed him to return to Young's home with the drugs after the transaction was complete. Not only was Rodriguez's possession of the drugs a *foreseeable* goal, it was the *explicit* goal of the conspiracy.

Furthermore, a jury could infer Young's intent to distribute both cocaine and heroin based on the substantial amount of drugs recovered by police.[2] We have held that "[w]hen a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone." *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992).

---

[2]Police recovered 4.01 kilograms of cocaine and 917 grams of heroin from Rodriguez's vehicle.

7

A jury believing this circumstantial evidence and viewing "the inferences logically deducible therefrom in the light most favorable to the government," *United States v. McNeill,* 887 F.2d 448, 449-50 (3d Cir. 1989), could find beyond a reasonable doubt that Young possessed the drugs with intent to distribute them. [3]

## III.

Young also challenges his sentence for the drug-related offenses, arguing that the District Court erred by imposing a two-level enhancement for Young's role in the offense and that his sentence was unreasonable.

## A.

The District Court increased Young's offense level by two levels pursuant to USSG § 3B1.1(c) after determining that he was a manager of the conspiracy. Because Young did not object to the application of this enhancement at sentencing, we will review for plain error. *United States v. Pardo*, 25 F.3d 1187, 1193 (3d Cir. 1994).

Section 3B1.1(c) provides for a two-level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." "[A] manager or supervisor is one who exercises some degree of control over others involved in the

---

[3]In addition to claiming that his conviction was supported by insufficient evidence at trial, Young also appeals the denial of his new trial motion on grounds that the jury's verdict was "against the weight of evidence." In evaluating a challenge to the weight of the evidence, we exercise our own judgment in assessing the evidence, rather than viewing it in the light most favorable to the verdict winner. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999). For essentially the same reasons that it was sufficient to support the convictions, we hold that the jury's verdict was not "against the weight of evidence."

offense." *United States v. Chau*, 293 F.3d 96, 103 (3d Cir. 2002) (quoting *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir. 1990) (internal quotation marks omitted)). Young's activity clearly met this definition. Young recruited Rodriguez to travel from Florida to Philadelphia to assist in the July 30 transaction and paid his travel expenses. Additionally, on the morning of that transaction, Young gave Rodriguez a bag with $60,000 and directed him to the Wal-Mart parking lot where the exchange of drugs took place. This activity demonstrates that Young "exercised control over at least one other person." *United States v. Katora*, 981 F.2d 1398, 1402 (3d Cir. 1992). Accordingly, the District Court's determination that Young played a managerial role was not plainly erroneous.

## B.

Young also argues that his within-Guidelines sentence of 270 months was unreasonable. Young asserts that a 236-month sentence would have been sufficient and that the District Court mischaracterized his criminal history by stating that he had been involved in "one crime after another."

Young's argument is unpersuasive on the facts and the law. As for the facts, the record demonstrates that Young was previously convicted of third-degree murder, forgery, and bank fraud. The District Court accurately lamented Young's extensive criminal history and carefully applied the applicable factors under 18 U.S.C. § 3553(a). As for the law, our standard of review of the substantive reasonableness of sentencing

determinations is deferential because the District Court "is in the best position to determine the appropriate sentence in light of the particular circumstances of the case." *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006) (internal quotation marks omitted)). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). This principle was recently reaffirmed by an *en banc* panel of this Court. *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Accordingly, we conclude that Young's sentence is a far cry from unreasonable.

IV.

Finally, Young argues that the 12-month consecutive sentence imposed by the District Court for the violation of his supervised release was substantively unreasonable. Specifically, Young asserts that a consecutive sentence was "greater than necessary" to achieve the goals enumerated in 18 U.S.C. § 3553(a) in light of Young's age — 48 years old at sentencing — and the substantial sentence — over 22 years — that he already faced for his drug convictions.

We review a sentence for the violation of supervised release for reasonableness as we would review an initial sentence. *United States v. Bungar*, 478 F.3d 540, 542 (3d Cir. 2007). After properly calculating the advisory Guidelines range, the District Court acknowledged that "age is a factor" and considered actuarial tables in an effort to avoid

10

imposing "an actuarial life sentence" on Young.  The Court expressly recognized that a lengthy sentence for someone Young's age might constitute an "unwarranted sentence disparity" as compared to someone younger.  The District Court also discussed Young's extensive criminal record and lamented the fact that he became involved in the drug conspiracy so soon after his release on the bank fraud conviction. [4]

We find the District Court's discussion at sentencing to be more than adequate to meet the requirements of § 3553(a).  Moreover, the decision to impose a concurrent or consecutive sentence is within the District Court's discretion.  *See* 18 U.S.C. § 3584(a)*; United States v. Velasquez*, 304 F.3d 237, 243 (3d Cir. 2002).  The District Court properly acknowledged that the violation of one's supervised release is "an affront to the authority of the Court which is separate from the violation [or] the affront to the United States of America" in the underlying drug matter.  *See United States v. Blackston*, 940 F.2d 877, 881 n.7 (3d Cir. 1991) ("Violation of supervised release is a separate offense.").  Therefore, the District Court did not abuse its discretion in this regard.

V.

For the foregoing reasons, we will affirm the judgments of the District Court.

---

[4]The Honorable Stewart Dalzell presided over Young's sentencing for bank fraud in 1997 and his violation hearing, and the record demonstrates that Judge Dalzell was familiar with Young's circumstances and personal characteristics.