NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0610n.06

**No. 18-6318**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Oct 26, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOSHUA DONALD EWING, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**BEFORE:** **GIBBONS, STRANCH, and BUSH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Joshua Ewing returns to this court seeking to vacate his sentence and remand his case to the district court for resentencing. He challenges his sentence as substantively unreasonable and argues that the district court's departure pursuant to § 5K2.1 was procedurally unreasonable. On this record, we find the term of imprisonment imposed, a 486% increase from the top of Ewing's guideline range, to be substantively unreasonable. We **VACATE** Ewing's sentence and **REMAND** the case to the district court for resentencing and resolution of the claim for restitution.

## I. BACKGROUND

On May 5, 2016, Joshua Ewing was indicted on one count of knowingly and intentionally distributing a mixture or substance containing heroin and fentanyl, the use of which may have resulted in the overdose death of Jeremy Deaton, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The details of the transaction and the circumstances of Deaton's death are chronicled

at length in our first opinion regarding his conviction and sentence. *United States v. Ewing*, 749 F. App'x 317, 319–20 (6th Cir. 2018). Ewing went to trial and a jury found him guilty of the indicted charge. The district court gave Ewing a mandatory life sentence pursuant to the "death results" provision of § 841(b)(1)(C). *See Burrage v. United States*, 571 U.S. 204, 210 (2014). It also imposed a restitution requirement in the amount of $23,094 to pay for Deaton's funeral.

On appeal, Ewing argued that there was insufficient evidence to support his "death results" conviction. Under *Burrage* and its Sixth Circuit progeny, the Government had to prove (1) "knowing or intentional distribution of heroin [and fentanyl]"; and (2) use of the drug distributed by the defendant was "a but-for cause of the victim's death." 571 U.S. at 210; *United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015). We held that the Government failed to show that Ewing sold the drugs that caused Deaton's death, reasoning: "the absence of heroin or heroin metabolites in Deaton's blood and the lack of any evidence or testimony to explain its absence leaves us unable to conclude that the jury's verdict as to the death results [provision] is supported by sufficient evidence." *Ewing*, 749 F. App'x at 330. We therefore vacated Ewing's death results conviction and remanded the case to the district court to enter judgment on the lesser-included offense of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and for resentencing. *Ewing*, 749 F. App'x at 331.

On remand, Ewing's revised total offense level (12) and criminal history category (VI) yielded a guideline range of 30 to 37 months of imprisonment. But the Government requested an 18-level upward departure under USSG § 5K2.1, a provision reserved for cases in which "death resulted." *Cf.* § 841(b)(1)(C). To that end, it presented two witnesses, Agent Timothy Graul and Mike Ward, in an effort to demonstrate that Ewing sold Deaton the drug that led to his death.

The Government also suggested that, if it declined to depart, the district court should vary above the guideline range as a result of the court's evaluation of the § 3553(a) sentencing factors.

The district court sentenced Ewing to 15 years of incarceration and 6 years of supervised release. It reasoned:

> I have found that 30 to 37 months, in my view, does not properly reflect the seriousness of this offense. I think 5K2.1 says I can increase the matter. The question is, is it a variance . . . or would it be a departure. . . . I'm not sure what the difference is. They said I may go up is what it says in the book. But I look at 3553(a) and there's some seriousness of the offense, people died, a person died.

No mention of the district court's previous restitution order was made at the second sentencing, but the previous order of restitution was entered in the Amended Judgment. Ewing appeals the duration of his prison sentence and the attached restitution order.

## II. ANALYSIS

### A.      Standard of Review

We review a criminal sentence imposed by the district court for procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). A challenge to a defendant's legal eligibility for a sentencing departure is a procedural challenge, whereas the contention that the resulting sentence is "greater than necessary" is a substantive challenge to the sentence. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020); *see also United States v. Moon*, 513 F.3d 527, 542–44 (6th Cir. 2008). We review a district court's decision to depart upward or vary from the guideline range for abuse of discretion. *United States v. Erpenbeck*, 532 F.3d 423, 440 (6th Cir. 2008). In doing so, we assess legal conclusions de novo and factual findings for clear error. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

### B.      Discussion

We begin with Ewing's argument that his sentence is substantively unreasonable. "[T]he substantive reasonableness inquiry determines if the length of a sentence conforms with the

sentencing goals set forth in 18 U.S.C. § 3553(a) and asks whether the district judge 'abused his discretion in determining that the § 3553(a) factors supported the sentence imposed.'" *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez*, 140 S. Ct. at 766). While a sentence is procedurally reasonable where "the trial court follows proper procedures and gives adequate consideration to [the § 3553(a)] and other listed factors," substantive reasonableness review concerns the outcome. *Holguin-Hernandez*, 140 S. Ct. at 766; *see also United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Even if the district court followed proper procedures and adequately considered the appropriate factors, we ask whether the district court nevertheless imposed a sentence that is "greater than necessary." *Holguin-Hernandez*, 140 S. Ct. at 766–67; *see also United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019); *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

Within the substantive reasonableness inquiry, we must consider "the 'extent of the deviation'" from the guidelines range and "make sure that 'the justification is sufficiently compelling to support the degree of'" divergence. *Perez-Rodriguez*, 960 F.3d at 755 (quoting *Gall*, 552 U.S. at 50). "The 'farther the judge's sentence departs [or varies] from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be.'" *United States v. Aleo*, 681 F.3d 290, 299 (6th Cir. 2012) (quoting *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007)). Imposing a sentence of arbitrary length is substantively unreasonable. *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018).

Ewing first asserts that his present sentence is unreasonable because it rests on the tacitly restored conclusion that the drugs he sold caused Deaton's death. On remand, the Government attempted to establish that Ewing caused Deaton's death, but it presented no new evidence. Agent Timothy Graul again testified to the transaction that occurred between Ewing and Deaton. He did

not speak to Deaton's cause of death. Mike Ward, a former employee of the Medical Examiner's Office, testified that, in his opinion, cocaine alone did not cause Deaton's death. The district court ruled: "I think that the evidence is sufficient to find that Mr. Ewing sold Mr. Deaton heroin laced with fentanyl." [R 90, PageID 638] The district court did not find that Ewing's drugs caused Deaton's death.

But, whether applied as a departure or justification for a variance, the conclusion that Ewing caused Deaton's death informed the district court's sentencing decision. The district court reasoned:

> I look at 3553(a) and there's some seriousness of the offense, people died, a person died, a person died after a person had just gotten out of incarceration on probation. There's got to be some respect for the law. Nobody profits from this. One person died, one person's paying for it with a substantial period of incarceration.

[*Id.*, PageID 654]

Ewing contends that his sentence is substantively unreasonable for the additional reason that, save its discussion of the seriousness of his offense and brief reference to his family, the district court failed to consider the § 3553(a) factors. He argues too, that his 15-year prison sentence was arbitrarily imposed because the district court simply adopted the Government's recommendation of 15 years in prison (the sentence the Government offered—and Ewing rejected—in plea negotiations) without sufficient independent consideration.

Our substantive reasonableness task is to determine whether the district court provided a "sufficiently compelling" rationale to support Ewing's 15-year sentence—a sentence 486% greater than the top of the guideline range. *Gall*, 552 U.S. at 50. First, the record reveals that the Government failed to establish a causal link beyond a reasonable doubt between the drugs sold and Deaton's death. *Ewing*, 749 F. App'x at 329–30. The district court on remand unjustifiably assumed, without deciding, that Ewing caused Deaton's death. Second, the district court

considered only the seriousness of the offense; it did not consider the remaining § 3553(a) factors. Specifically, the district court gave inadequate consideration to the routine circumstances of the transaction, Ewing's own life history and drug addiction, and the residual uncertainty as to whether the drugs Deaton procured from Ewing caused his death. Third, and perhaps most glaringly, the district court failed to address Ewing's explicit warning to Deaton that the drugs were unusually potent. While it was rightly troubled by the potency of the drugs Ewing sold, the district court failed to consider the mitigating effect of Ewing's warning to Deaton to use only half his regular dose. Because the district court did not consider these critical factors, it failed to provide a sufficiently compelling rationale for the sentence imposed[1]; an inadequately justified increase is not only greater than necessary in Ewing's case, but it risks creating sentencing disparities between similar-situated defendants. *Boucher*, 937 F.3d at 708.

Whether the sentence imposed was predicated on a departure, a variance, or both—Ewing's sentence is substantively unreasonable. *See Gall*, 552 U.S. at 50. A sentencing increase of this magnitude implicates the numerous protections of substantive reasonableness review particular to the facts of a defendant's case and the uniform sentencing policies advanced by the Guidelines. *Boucher*, 937 F.3d at 708. It therefore must be buttressed by a correspondingly substantial justification supported by the record. *Perez-Rodriguez*, 960 F.3d at 755. Here, it was not.

Regarding Ewing's procedural reasonableness challenge, we cannot conclusively discern from the record whether the district court departed under § 5K2.1 or varied following its assessment of the § 3553(a) factors. But because we conclude that the resulting sentence is substantively unreasonable either way, there is no need to resolve the parties' procedural dispute

---

[1] Incorporation of Ewing's first sentencing proceeding would not alter this result. Ewing's initial sentence was mandatory. The district court lamented the loss of life, the cost of the drug trade, and noted that Ewing's warning to Deaton to use less of the unusually potent or "killa" substance was maddeningly prophetic. But barring its summary of the offense, the court did not address the § 3553(a) factors.

related to the departure's application. Because Ewing's sentence is substantively unreasonable, *Holguin-Hernandez*, 140 S. Ct. at 766, we vacate his sentence and remand to the district court for resentencing.

The final issue presented is the restitution order for funeral expenses. The familiar rule is that "if there is a discrepancy between the oral pronouncement of a criminal sentence and the written judgment, the oral sentence generally controls." *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000) (citing *United States v. Schultz,* 855 F.2d 1217, 1225 (6th Cir. 1988)). One exception, however, is "in a resentencing proceeding where the record suggests a substantial possibility that the district court misspoke in an oral pronouncement regarding a portion of the sentence that was neither discussed nor disputed by the parties." *Id.* at 407 (quoting *United States v. Jolly*, 129 F.3d 287, 289 (2d Cir. 1997)).

Ewing argues that *Cofield* is distinguishable because there, the omitted supervised release term was mandatory. He asserts that absent the original "death results" conviction under § 841(b)(1)(C), he would have challenged the requirement that he pay for Deaton's funeral expenses. He also contends that the district court did not merely misspeak, *cf. United States v. Gibbs*, 461 F. App'x 419, 421 (6th Cir. 2012), but "failed to mention a facet of his punishment" implicated by our decision to vacate the "death results" conviction. *Cofield*, 233 F.3d at 407; *see also United States v. Penson*, 526 F.3d 331, 334–35 (6th Cir. 2008).

The district court did not merely misspeak in this case when it neglected to address restitution. There is also reason to believe that Ewing would have challenged the restitution order after we held that there was insufficient evidence linking his actions to Deaton's death. *Ewing*, 749 F. App'x at 329. And unlike the supervised release term at issue in *Cofield*, restitution was not mandatory. *See Cofield*, 233 F.3d at 407. Restitution should be considered on remand.

## III.  CONCLUSION

For the foregoing reasons and the reasons articulated in the concurrence by Judge Gibbons,

we **VACATE** Ewing's sentence, and **REMAND** the case to the district court for resentencing.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.** At Joshua Ewing's resentencing, the sentencing guidelines advised the district court to sentence Ewing to somewhere between 30 to 37 months of imprisonment. He left court that day with a sentence of 180 months (15 years). Of course, as we know, the sentencing guidelines are only advisory, and an out-of-guidelines sentence may be entirely warranted in some cases. But any deviation from the guidelines must be substantively reasonable and "no greater than necessary." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020). While I agree that Ewing's sentence was substantively unreasonable, I write separately to highlight what I believe to be the district court's fundamental error: failing to make the necessary factual finding that the drugs Ewing sold Deaton caused Deaton's death.

"A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Sentences above the guidelines range are "not entitled to a presumption of reasonableness," and the "greater the variance" the "more compelling the justification" must be. *United States v. Aleo*, 681 F.3d 290, 300 (6th Cir. 2012).

The district court seemed to base its decision to sentence Ewing above the guidelines range primarily on its assumption that the heroin that Ewing sold to Deaton killed Deaton. But the assumption that Ewing's drugs killed Deaton was just that: an assumption. The district court never actually made a factual finding that Ewing's drugs were the cause of Deaton's death. During the plea colloquy, the district court found that "the evidence is sufficient to find that Mr. Ewing sold Mr. Deaton heroin laced with fentanyl." DE 90, Sent. Tr., PageID 638. But it never made that finding and also failed to find that the heroin laced with fentanyl was the cause of Deaton's death.

True, the court seemed to proceed based on a belief that the drugs Ewing sold were the cause of Deaton's death, and it made a fleeting reference to "ships passing in the night and . . . collid[ing] . . . result[ing] in death," but the district court never explicitly made a finding that those drugs were the cause of Deaton's death or gave any factual basis as to how it would have concluded that those drugs were the cause of Deaton's death. (DE 90, Sent. Tr., PageID 653.) That failure to make a factual finding means that this case must be remanded for resentencing.

The dissent disagrees and argues that the district court made the factual finding through "inference." Dissent, at 15–16. The dissent believes that since the district court stated (1) that there was sufficient evidence to find that the drugs Ewing sold Deaton were heroin laced with fentanyl, and (2) that the judge "heard Mr. Ward testify that he did not believe there was any cocaine that played a part in Mr. Deaton's death" that, by "process of elimination," the district court found "that it was more likely than not that Deaton died as a result of the heroin laced with fentanyl sold by Ewing—not another drug." (*Id.*) But if the district court truly made this inferential leap, it should have said so. It is the role of the district court to draw inferences through explicit explanation; it is not our role to supply the missing inference through guesswork.

Although we must give a district court deference while reviewing its sentence, we need not read between the lines of the district court's decision and search for any possible way to justify that sentence. After all, "our job is to review sentences, not rubber stamp them." *United States v. Schrank*, --- F.3d ---, 2020 WL 5511980, *2 (6th Cir. 2020). This record "leaves [me] unsure as to the whether the district court" actually found that the drugs Ewing sold Deaton were the cause of Deaton's death. *United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007).

Given that the district court did not make the proper factual finding in this case, the sentence that Ewing received was based on impermissible factors and was, therefore, substantively

unreasonable. *See Conaster*, 514 F.3d at 520. Before a district court may consider a fact during sentencing, the court must find that fact to be true by a preponderance of the evidence. *United States v. Haj-Hamed*, 549 F.3d 1020, 1026 (6th Cir. 2008). As that finding was not made in this case, the district court's reliance on its assumption that the drugs Ewing sold caused Deaton's death was improper. While this conclusion may, at first glance, seem pedantic, we have an obligation to "turn square corners" while depriving someone of their liberty. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). No person should be sentenced—let alone sentenced to a term of imprisonment 486% higher than the guidelines range—based on assumptions instead of facts.

For that reason, I concur.

**JOHN K. BUSH, Circuit Judge, concurring in part and dissenting in part.** I agree that resentencing is required for restitution, but I would affirm the district court's sentence with respect to the term of imprisonment. The government argues that Joshua Ewing failed to preserve his objection to the imposition of a departure under USSG § 5K2.1, but it is unnecessary to address that question. Even if Ewing had properly preserved his objection, the district court acted within its discretion when it determined that Ewing's crime was no run-of-the-mill drug distribution offense. Only a few weeks after being placed on probation for another drug-related offense, he was back on the street selling more drugs. He knew those drugs were exceptionally dangerous—that is why he described them as "killa" to his customer, Jeremy Deaton. And that danger is why the district court found that they resulted in Deaton's overdose death.

The district court departed or varied upward from the Sentencing Guidelines because, as the court explained, the advisory range "does not properly reflect the seriousness of this offense." Though the district court's statements on the record were brief, enough was said to support the sentence imposed. That sentence should be affirmed. I therefore respectfully dissent in part from the majority opinion.

**I.**

We review Ewing's sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 46 (2007); *United States v. Erpenbeck*, 532 F.3d 423, 440 (6th Cir. 2008). This standard considers both the procedural and substantive reasonableness of the sentence. *Gall*, 552 U.S. at 51; *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008).

Review for procedural reasonableness addresses issues such as whether the district court "fail[ed] to calculate (or improperly calculate[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly

erroneous facts, or fail[ed] to adequately explain the chosen sentence." *Moon*, 513 F.3d at 539 (quoting *Gall*, 552 U.S. at 51); *accord United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018). Even if the district court did not "explicitly reference" each § 3553(a) factor at resentencing, a sentence may be procedurally reasonable if there is "sufficient evidence in the record to affirmatively demonstrate the court's consideration of them." *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (quoting *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006)); *see also United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016) ("[T]he requirement that a district court weigh the factors does not obligate the district court to make express on-the-record 'findings' on each one . . . [W]e do not 'read a sentencing transcript in a vacuum . . . [but rather] review[ ] the record as a whole.'" (citation omitted)).

Review for substantive reasonableness—the majority's focus—addresses whether the district court "select[ed] the sentence arbitrarily, base[ed] the sentence on impermissible factors, fail[ed] to consider pertinent § 3553(a) factors or g[ave] an unreasonable amount of weight to any pertinent factor." *Moon*, 513 F.3d at 543 (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)); *accord Nichols*, 897 F.3d at 737. An inquiry into substantive reasonableness asks whether a sentence is "greater than necessary." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020)). To show that a sentence is not greater than necessary, a court must "ensure that the justification is sufficiently compelling to support the degree of variance." *Id.* at 754 (quoting *Gall*, 552 U.S. at 50). In reviewing this justification, our court "looks to whether the sentence is reasonable, as opposed to whether in the first instance [it] would have imposed the same sentence." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (citation omitted).

Finally, when reviewing the imposition of a departure from the Guidelines range specifically, we ensure that the district court considered the following questions: "What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?" *Erpenbeck*, 532 F.3d at 440 (quoting *Koon v. United States*, 518 U.S. 81, 95 (1996)).

## II.

The district court did not clarify whether the sentence was based on a departure from the Sentencing Guidelines under USSG § 5K2.1 or a variance based 18 U.S.C. § 3553(a). It does not matter which avenue the district court took. As explained below, the sentence should be affirmed regardless of the basis for the district court's decision because the sentence is both procedurally and substantively reasonable.

### A.  Departure under USSG § 5K2.1

Two potential issues arise with regard to the applicability of USSG § 5K2.1's "death resulted" departure: whether Ewing had the requisite intent, and whether the district court found sufficient evidence of causation. Section 5K2.1 provides, "If death resulted, the court may increase the sentence above the authorized guideline range." United States Sentencing Commission, *Guidelines Manual*, USSG § 5K2.1, p.s. Despite a circuit split, there exists "no binding Sixth Circuit or Supreme Court precedent requiring a district court to make an 'intended' or 'knowingly risked' factual finding" before applying a departure under § 5K2.1. *United States v. Robinson*, 732 F. App'x 405, 409 (6th Cir. 2018). *Compare United States v. White*, 979 F.2d 539, 545 (7th Cir. 1992) (holding that § 5K2.1 departures must "be supported by findings that

death was intentionally or knowingly risked") *and United States v. Rivalta*, 892 F.2d 223, 232–33 (2d Cir. 1989) (same) *with United States v. Bayles*, 986 F.2d 1415, 1993 WL 46892, at *3 (6th Cir. 1993) (unpublished table opinion) (rejecting that a finding of intentional or knowing risk of a resulting death is required to impose a § 5K2.1 departure). Regardless of the required intent, the record supported the district court's § 5K2.1 departure. Ewing himself referred to the drugs he sold to Deaton as "killa," from which the district could conclude that Ewing, in fact, knew that the drugs could kill Deaton.

Additionally, the district court had sufficient evidence to find a causal link between the drugs Ewing sold and Deaton's death. At sentencing, the government need only prove causation by a preponderance of the evidence—not beyond a reasonable doubt. *See United States v. White*, 551 F.3d 381, 383 (6th Cir. 2008). That this court vacated Ewing's prior sentence because the causal link between the drugs sold and Deaton's death could not be established beyond a reasonable doubt is not determinative, *United States v. Ewing*, 749 F. App'x 317, 329–330 (6th Cir. 2018), as a district court may "consider…acquitted conduct when [upwardly departing to] impos[e] sentences below the statutory maximum." *Robinson*, 732 F. App'x at 408 (quoting *United States v. Churn*, 800 F.3d 768, 780 (6th Cir. 2015)); *see also United States v. Watts*, 519 U.S. 148, 157 (per curiam) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.").

The district court made an inference based on process of elimination, stating that "there is sufficient evidence to permit a reasonable jury to find that the drugs sold by Ewing to Deaton was heroin laced with fentanyl. I've just heard Mr. Ward testify that he did not believe there was any cocaine that played a part in Mr. Deaton's death. There was evidence that he had used cocaine,

but by the time he died, there was no cocaine in his blood or any of its analogs." Furthermore, the district court explicitly stated that "the evidence is sufficient to find that Mr. Ewing sold Mr. Deaton heroin laced with fentanyl." In other words, the district court reasoned that it was more likely than not that Deaton died as a result of the heroin laced with fentanyl sold by Ewing—not another drug. Later, the district court clarified, perhaps poetically, that the drug transaction "result[ed] in a death."

The district court need not invoke "magic words" when making a factual finding, as long as we are able to conduct "an informed appellate review." *United States v. Pineda-Duarte*, 933 F.3d 519, 525 (6th Cir. 2019) (citation omitted); *see also United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). We are able to undertake such a review here. Moreover, the district court explained its basis for its finding immediately following the presentation of the government's witnesses, while further explaining that the result of death led the court to impose a higher sentence after Ewing spoke.

Thus, the district court adequately explained its sentence and supported the departure with sufficient evidence, satisfying the demands of both procedural and substantive reasonableness. *See Moon*, 513 F.3d at 539, 543. As the standard of review on appeal is a "'deferential abuse-of-discretion standard' for reasonableness," the district court's finding that Ewing's drugs more likely than not caused Deaton's death is well within the realm of its discretion. *Erpenbeck*, 532 F.3d at 440 (quoting *Gall*, 552 U.S. at 41).

### B. Section 3553 Factors

The district court's analysis was also adequate to support a variance from the Guidelines based on the relevant § 3553 factors. According to the majority, the district court did not consider "the routine circumstances of the transaction, Ewing's own life history and drug addiction, and the

residual uncertainty as to whether the drugs Deaton procured from Ewing caused his death." Majority Opinion at 6. In fact, the district court did take those considerations into account, albeit tersely. But the district court's brevity is no basis for reversal, given that it said all of the things that needed to be said.

First, the district court found that the circumstances of the transaction were far from typical. The court concluded that it is not "routine" for someone to sell lethal drugs soon after being placed on probation for drug-related offenses. The purpose of probation is to mitigate the impact of incarceration upon return into lawful society, not allow him to immediately return to a life of crime with even more deadly consequences than before.

Second, with regard to Ewing's history and characteristics, the district court did discuss Ewing's drug addiction: "I've got two families that are hurting…because their sons were drug addicts. Mr. Ewing is a drug addict just as much as Mr. Deaton was." *See* 18 U.S.C. § 3553(a)(1). The district court also referenced Ewing's history and characteristics in terms of his own family: "It results in the father of a brand new baby going to prison." *Id.* It was reasonable for the district court to discount these facts in light of Deaton's death—considering that, as noted, the district court was well within its discretion to find that the drugs Ewing sold more likely than not caused Deaton's death.

Finally, the majority states that the district court ignored Ewing's text message to Deaton that the drugs were "killa." Majority Opinion at 6. To the contrary, the district court found this exchange to be probative of Ewing's intent. In characterizing the text message exchange between Ewing and Deaton, the district court states that Ewing essentially said, "I got some killa stuff…I'm going to sell you something that's bad. It's so bad that you should only take half of what you normally take." The majority reads this "warning" as a mitigating factor, suggesting that the

defendant was acting cautiously. Majority Opinion at 6. But there is another plausible reading of the text "killa"—one that the district court, in the exercise of its discretion, was entitled to take and one that we are required by the standard of review to respect. Namely, the district court was well within its discretion to read "killa" to mean killer drugs—as in, drugs that can kill you. In the district court's view, the word "killa" exposed Ewing's culpability: he was essentially selling Deaton a round of Russian roulette—a substance that might lead to a lethal outcome—immediately after being placed on probation by a state court for another drug offense.

Given Ewing's text message and the other circumstances of his offense, it was well within the discretion of the district court to find that his crime warranted a lengthier sentence. The district court cited those facts—particularly, that Ewing sold "killa" drugs to Deaton soon after being placed on probation—to support its conclusion that a lengthier sentence would better fulfill the purposes of punishment outlined in § 3553(a)(2): "(A) [T]o reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment . . . ; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2); *cf. United States v. Marks*, 722 F. App'x 398, 403–04 (6th Cir. 2017) (holding that an upward variance was substantively reasonable where the defendant demonstrated a "clear pattern of recidivistic behavior that repeatedly occurred immediately upon his release"). Again, the district court sufficiently explained its decision based on proper consideration and weighing of the § 3553(a) factors, conforming to the requirements of both procedural and substantive reasonableness. *See Moon*, 513 F.3d at 539, 543.

**III.**

Ewing's behavior was far from ordinary: soon after being placed on probation from a drug-related offense, he showed no remorse or inclination to change his criminal ways. Instead, he sold "killa" drugs that did exactly what he told his customer they could do—kill him. The district court could, in its discretion, determine that such behavior warranted an upward variance or departure. I respectfully dissent.